1  BINGHAM McCUTCHEN LLP
   ALFRED C. PFEIFFER JR. (SBN 120965)
2  RANDY MICHELSON (SBN 114095)
   KRISTEN A. PALUMBO (SBN 215857)
3  JENNIFER C. JOHNSON (SBN 217507)
   Three Embarcadero Center
4  San Francisco, CA 94111-4067
   Telephone:  (415) 393-2000
5  Facsimile:  (415) 393-2286

6  Attorneys for Creditors and Plan Proponents
   Indivos Corporation and Solidus Networks, Inc.

7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                  SAN JOSE DIVISION

11

| 12 | In re | Case No. 04-53874-ASW11 |
| 13 | EXCEL INNOVATIONS, INC., | Chapter 11 |
| 14 | Debtor. | **DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF LIQUIDATION FOR EXCEL INNOVATIONS, INC. PROPOSED BY INDIVOS CORPORATION AND SOLIDUS NETWORKS, INC.** |

17
                              Confirmation Hearing:
18                            Date:  **TBD**
                              Time:  **TBD**
19                            Place:  Courtroom 3099
                                      280 South First Street
20                                    San Jose, California 95113

21                            Ballot and Objection Deadline:  **TBD**

22

23

24

25

26

Case: 04-53874   Doc# 282   Filed: 03/04/05   Entered: 03/04/05 17:10:16   Page 1 of 49

SF/21606462.4

# TABLE OF CONTENTS

Page

I.  INTRODUCTION AND OVERVIEW ........................................................ 1

    A.  Introduction .................................................................................... 1

    B.  The Purpose Of This Disclosure Statement ..................................... 3

    C.  Important Notice, Disclaimers and Cautionary Statement............... 4

    D.  Summary Of Entities Entitled To Vote On The Plan........................ 6

    E.  Voting Procedures, Balloting Deadline, Confirmation Hearing, And Other
        Important Dates, Deadlines And Procedures ..................................... 7

        1.  Voting Procedures And Deadlines ........................................... 7

        2.  Withdrawal of Votes on the Plan ............................................ 9

        3.  Date Of The Confirmation Hearing And Deadlines For Objection
            To Confirmation Of The Plan ................................................. 9

    F.  Additional Information ................................................................. 10

II. BACKGROUND INFORMATION ........................................................ 11

    A.  The Debtor's General Business Operations Prior to the Petition Date ............... 11

    B.  Legal Proceedings ........................................................................ 12

        1.  The Arbitration ..................................................................... 12

        2.  The Patent Case .................................................................... 13

            a.  Claims Asserted ............................................................ 13

            b.  Court Rules Plan Proponents Own the Patents ............................ 14

        3.  The Santa Clara Case ............................................................ 14

        4.  The Napa Case ...................................................................... 15

    C.  Historical and Current Financial Information ................................. 15

    D.  The Debtor's Financial Difficulties and Significant Events Leading To the
        Commencement of the Bankruptcy Case ........................................ 16

    E.  Proceedings In The Bankruptcy Case ............................................ 16

        1.  Filing Of Schedules And Establishment Of Claims Bar Date ................. 16

            a.  Secured Claims .............................................................. 17

            b.  Non-Priority General Unsecured Claims ............................... 17

        2.  Adversary Proceeding ........................................................... 17

        3.  The Debtor's Future Business Plans ........................................ 18

        4.  Retention of Professionals..................................................... 18

        5.  Motions for Relief from Stay ................................................. 18

i

DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF LIQUIDATION FOR EXCEL INNOVATIONS,
INC. PROPOSED BY INDIVOS CORPORATION AND SOLIDUS NETWORKS, INC.
SF/21606462.4

6. Motion to Appoint Trustee ................................................................... 19

7. Expiration of Exclusive Period to File Plan of Reorganization .............. 19

III. SUMMARY OF PLAN ........................................................................... 19

A. Description of the Plan ...................................................................... 19

1. Non-Classified Claims ................................................................ 20

a. Administrative Claims ..................................................... 20

b. Professional Fees ............................................................ 21

c. U.S. Trustee Fees ............................................................ 21

2. Administrative Claims Bar Date .................................................. 21

a. General Administrative Claims ........................................ 21

b. Professionals .................................................................. 22

c. Priority Tax Claims ........................................................ 22

3. Classified Claims ....................................................................... 22

a. Class 1 Secured Claims ................................................... 22

(1) Class 1A (Claim of Bornstein and Bornstein) ................ 23

(2) Class 1B (Plan Proponents' Claim) ................................ 23

b. Class 2 Unsecured Claims ............................................... 24

(1) Class 2A Unsecured Priority Claims ............................... 24

(2) Class 2B General Unsecured Claims .............................. 24

c. Class 3 Equity Interests .................................................. 24

B. Post-Confirmation Governance/Liquidating Agent ............................ 25

1. Appointment of Liquidating Agent .............................................. 25

2. Rights and Duties of the Liquidating Agent ................................. 25

3. Disposition of Assets and Claims ................................................ 25

4. Right of Liquidating Agent to Convert Case ................................ 26

5. Execution of Documents and Corporate Action ........................... 26

6. Reports ...................................................................................... 27

7. Tax Returns ............................................................................... 27

8. Resignation or Removal ............................................................. 27

9. Engagement of Professionals ...................................................... 27

10. Compensation ........................................................................... 28

Case: 04-53874     Doc# 282     Filed: 03/04/05     Entered: 03/04/05 17:10:16     Page 3 of
49

| | | | | |
|---|---|---|---|---|
| | | 11. | Limited Liability | 28 |
| | | 12. | General Indemnification | 29 |
| | | 13. | Further Authorization | 29 |
| | C. | | Means of Effectuating the Plan | 29 |
| | | 1. | The Settlement | 29 |
| | | 2. | Reserve | 31 |
| | | 3. | Distributions | 31 |
| | | 4. | Treatment of Unclaimed Property | 31 |
| | | 5. | Time Bar to Cash Payments | 32 |
| | | 6. | De Minimis Distributions and Rounding of Distributions | 32 |
| | | 7. | Final Distribution Date | 32 |
| | D. | | Revesting of Title | 33 |
| | E. | | Retention and Enforcement of Claims | 33 |
| | | 1. | Retention of Claims | 33 |
| | | 2. | Claim Objections | 34 |
| | | 3. | Reserve Provision for Disputed Claims | 34 |
| | | 4. | Debtor's Officers, Directors, Employees, Agents and Professionals | 35 |
| | F. | | Treatment of Executory Contracts and Unexpired Leases | 35 |
| | G. | | Retention of Jurisdiction | 36 |
| IV. | | | CONFIRMATION AND EFFECTIVENESS OF THE PLAN | 37 |
| | A. | | Voting and Right To Be Heard at Confirmation | 37 |
| | | 1. | Who May Support Or Object To Confirmation Of The Plan? | 37 |
| | | 2. | Who May Vote To Accept Or Reject The Plan? | 37 |
| | | | a. What Is An Allowed Claim Or Equity Interest For Voting Purposes? | 38 |
| | | | b. What Is An Impaired Claim Or Equity Interest? | 38 |
| | | 3. | Who Is Not Entitled To Vote? | 38 |
| | | 4. | Votes Necessary To Confirm The Plan | 39 |
| | | 5. | Votes Necessary For A Class To Accept The Plan | 39 |
| | | 6. | Treatment Of Nonaccepting Classes | 39 |
| | | 7. | Request For Confirmation Despite Nonacceptance By One or More Impaired Classes | 40 |

DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF LIQUIDATION FOR EXCEL INNOVATIONS,
INC. PROPOSED BY INDIVOS CORPORATION AND SOLIDUS NETWORKS, INC.

SF/21606462.4

B.    Good Faith and Compliance with Law ................................................................ 40

C.    Liquidation Analysis ........................................................................................... 40

D.    Feasibility ........................................................................................................... 42

E.    Conditions To Confirmation Of The Plan ........................................................... 42

F.    Conditions To The Occurrence Of The Effective Date Of The Plan .................. 42

G.    Binding Effect of Confirmation .......................................................................... 42

H.    Channeling of Claims and Injunction ................................................................. 42

I.    Plan Controls ....................................................................................................... 43

V.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES ........................................... 44

VI.    RECOMMENDATION AND CONCLUSION ............................................................ 44

EXHIBIT A:   Plan of Liquidation for Excel Innovations, Inc. Proposed by Indivos
             Corporation and Solidus Networks, Inc.

EXHIBIT B:   Settlement Agreement and Mutual General Release

EXHIBIT C:   Ballots

EXHIBIT D:   Monthly Operating Reports

EXHIBIT E:   Resume of Liquidating Agent David A. Bradlow

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Case: 04-53874    Doc# 282    Filed: 03/04/05    Entered: 03/04/05 17:10:16    Page 5 of
49
SF/21606462.4

1 **I.     INTRODUCTION AND OVERVIEW**

2     **A.     Introduction**

3          Excel Innovations, Inc. ("Excel" or the "Debtor") filed a voluntary petition under

4 Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on June 17, 2004

5 ("Petition Date"), thereby commencing case number 04-53874-ASW11 (the "Bankruptcy Case")

6 pending before the United States Bankruptcy Court for the Northern District of California (the

7 "Bankruptcy Court"). The Debtor remains in possession of its assets as debtor-in-possession.

8          Creditors Solidus Networks, Inc. d/b/a Pay By Touch ("Solidus") and Indivos

9 Corporation ("Indivos") (collectively, "Plan Proponents") submit this Disclosure Statement to

10 holders of impaired Claims and Equity Interests pursuant to Bankruptcy Code section 1125 for

11 the purpose of soliciting acceptances of the Plan of Liquidation for Excel Innovations, Inc.

12 Proposed by Indivos Corporation and Solidus Networks, Inc. (the "Plan") and filed with the

13 Bankruptcy Court, a copy of which is attached hereto as **Exhibit A**. Unless otherwise defined

14 herein, all capitalized terms contained herein shall have the meanings ascribed to them in the

15 Plan.

16          The Bankruptcy Court has determined that this Disclosure Statement contains

17 "adequate information" within the meaning of section 1125 of the Bankruptcy Code to enable a

18 hypothetical reasonable investor, typical of holders of impaired Claims or Equity Interests

19 receiving this Disclosure Statement, to make an informed judgment about the Plan. Under

20 Bankruptcy Code section 1125, this approval enabled Plan Proponents to send holders of

21 impaired Claims and Equity Interests in connection with the solicitation of votes with respect to

22 the Plan. The Bankruptcy Court has not, however, passed on the Plan itself, nor conducted a

23 detailed investigation into the contents of this Disclosure Statement.

24          The Plan is a liquidating plan. The Debtor will cease business operations upon

25 consummation of the Plan. The Plan contemplates a settlement with Plan Proponents (the

26 "Settlement"), whereby Plan Proponents would pay the Estate $500,000 in exchange for a

Case: 04-53874    Doc# 282    Filed: 03/04/05    Entered: 03/04/05 17:10:16    Page 6 of
49
SF/21606462.4

1  mutual release between Indivos, Solidus, M. Robert Goldberg, William Ruh and Larry Ginsburg

2  on the one hand, and the Debtor on the other, whereby the parties mutually release and forever

3  discharge each other from any and all claims which any of them ever had, now has, or may later

4  claim to have against the other, pursuant to and with the exceptions set forth in the terms of the

5  Settlement that is attached hereto as **Exhibit B**. The consideration to be paid by Plan Proponents

6  under the Settlement will produce funds to pay the Allowed Claims against the Estate. All

7  property of the Debtor will be deposited into a Plan Fund on the Effective Date or as soon as

8  possible thereafter. On the Effective Date, all assets of the Estate shall be vested in the

9  Liquidating Agent. The Liquidating Agent will liquidate or otherwise collect the remaining

10 assets, reserve for Administrative Expenses and statutory fees and distribute funds to holders of

11 Allowed Claims.

12         Plan Proponents have calculated that the proofs of Claim filed against the Debtor,

13 together with the Claims scheduled by the Debtor (except for those scheduled as contingent,

14 unliquidated or disputed), total no more than approximately $480,000. Plan Proponents estimate

15 that after payment of Administrative Claims and fees for services rendered by the Liquidating

16 Agent, approximately $350,000 of the Settlement funds will be used to pay the Allowed Claims

17 against the Estate, representing approximately 70% of the total amount of Allowed Claims. It is

18 possible that additional sums will be received from the liquidation of other assets and distributed

19 to holders of Allowed Claims and, if sufficient, to holders of Equity Interests.

20         Plan Proponents believe that the Plan provides the greatest and earliest possible

21 recoveries to holders of Allowed Claims and Equity Interests, that the Plan presents the most

22 viable scenario in which all creditors will maximize payment on account of their claims, that

23 acceptance of the Plan is in the best interests of all parties, and that any alternative would result

24 in further delay, uncertainty, expense, and ultimately, smaller distributions to holders of Allowed

25 Claims and Equity Interests.

26

**B.    The Purpose Of This Disclosure Statement**

The purpose of this Disclosure Statement is to provide adequate information to enable a hypothetical reasonable investor typical of holders of impaired Claims or Equity Interests in the Bankruptcy Case to make an informed decision about the Plan.

This Disclosure Statement describes the Plan and contains information concerning, among other matters:

(1)    The Debtor's general business operations and legal proceedings in which it was a party prior to and at the time of the Petition Date;

(2)    The Debtor's historical and current financial information;

(3)    The Debtor's financial difficulties and significant events leading to the commencement of proceedings in bankruptcy;

(4)    The Bankruptcy Case;

(5)    A summary of the Plan;

(6)    A discussion of the Plan's feasibility and liquidation analysis setting forth what holders of Claims or Equity Interests in the Debtor would recover if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code;

(7)    Voting procedures;

(8)    The deadlines for casting ballots with respect to the Plan;

(9)    The deadlines for objecting to confirmation of the Plan;

(10)    The requirements that must be satisfied in order for the Bankruptcy Court to confirm the Plan; and

(11)    The effect of confirmation of the Plan.

Parties in interest should read this Disclosure Statement, the Plan, and all of the accompanying exhibits in their entirety in order to ascertain:

(1)    How the Plan will affect their Claims against and Equity Interests in the Debtor;

DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF LIQUIDATION FOR EXCEL INNOVATIONS, INC. PROPOSED BY INDIVOS CORPORATION AND SOLIDUS NETWORKS, INC.

SF/21606462.4

(2) Their rights with respect to voting for or against the Plan;

(3) Their rights with respect to objecting to confirmation of the Plan; and

(4) How and when to cast a ballot with respect to the Plan.

Plan Proponents urge you to carefully review the contents of the Disclosure Statement and Plan before making a decision to accept or reject the Plan. The Disclosure Statement, however, cannot and does not provide holders of Claims and Equity Interests with legal or other advice, or inform such parties of all aspects of their rights. Claimants are advised to consult with their lawyers and/or financial advisors to obtain specific advice regarding how the Plan will affect them and regarding their best course of action with respect to the Plan.

**C. Important Notice, Disclaimers and Cautionary Statement**

For the convenience of holders of Claims and Equity Interests, this Disclosure Statement summarizes the terms of the Plan, but the Plan itself qualifies any summary. If any inconsistency exists between the Plan and the Disclosure Statement, the terms of the Plan are controlling.

No representations concerning the Debtor's financial condition or any aspect of the Plan are authorized by the Bankruptcy Court other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance which are other than as contained in or included with this Disclosure Statement should not be relied upon by you in arriving at your decision.

The contents of this Disclosure Statement should not be construed as legal, business or tax advice. Each creditor or interest holder should consult his or her own legal counsel and accountant as to legal, tax or other matters concerning his or her claim or interest.

This Disclosure Statement speaks as of March 4, 2005. The delivery of this Disclosure Statement shall not, under any circumstances, create any implication that the information in the Disclosure Statement is correct as of any time after that date, or that there has been no change in the affairs of the Debtor as of such later date.

Case No. 04-53874

DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF LIQUIDATION FOR EXCEL INNOVATIONS, INC. PROPOSED BY INDIVOS CORPORATION AND SOLIDUS NETWORKS, INC.

SF/21606462.4

1        The historical financial and other data relied upon in preparing the Plan and this

2 Disclosure Statement and the liquidation analysis, estimates and all other financial information

3 referenced in this Disclosure Statement are based upon the Debtor's filings with the Bankruptcy

4 Court. ***Plan Proponents have not independently verified such information and, accordingly,***

5 ***make no representations as to its accuracy and, in fact, believe that the much of the***

6 ***information in the Debtor's filings with the Bankruptcy Court is substantially inaccurate.***

7 Moreover, although reasonable efforts have been made to provide accurate information, Plan

8 Proponents cannot warrant or represent that the information in this Disclosure Statement,

9 including any and all financial information, is without inaccuracy or omissions, or that actual

10 values or distributions will comport with the estimates set forth herein.

11       ***No entity may rely upon the Plan or this Disclosure Statement or any of the***

12 ***accompanying exhibits for any purpose other than to determine whether to vote in favor of or***

13 ***against the Plan.*** Nothing contained in such documents constitutes an admission of any fact or

14 liability by any party, and no such information will be admissible in any proceeding involving

15 the Debtor, Plan Proponents, or any other person, nor will this Disclosure Statement be deemed

16 evidence of the tax or other legal effects of the Plan on the Debtor or holders of Claims or Equity

17 Interests in the Bankruptcy Case.

18       Summaries of certain provisions of agreements referred to in this Disclosure

19 Statement do not purport to be complete and are subject to, and are qualified in their entirety by

20 reference to, the full text of the applicable agreement, including the definitions of terms

21 contained in such agreement.

## CAUTIONARY STATEMENT

22

23       Certain information included in this Disclosure Statement and its exhibits contains

24 forward-looking statements within the meaning of the Securities Act of 1933, as amended, and

the Securities Exchange Act of 1934, as amended. The words "anticipate," "believe,"

25 "estimate," "will," "intend," and "expect" and similar expressions identify forward-looking

26

DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF LIQUIDATION FOR EXCEL INNOVATIONS,
INC. PROPOSED BY INDIVOS CORPORATION AND SOLIDUS NETWORKS, INC.

SF/21606462.4

1    statements.  Such forward-looking information is based on information available when such

2    statements are made and is subject to risks and uncertainties that could cause actual results to

3    differ materially from those expressed in the statements.

4           Certain of the statements contained in this Disclosure Statement, by nature, are

5    forward-looking and contain estimates and assumptions.  Although Plan Proponents believe that

6    their estimates and assumptions reflecting in those forward-looking statements are reasonable,

7    Plan Proponents can give no assurance that these estimates and assumptions will be realized.

8    Forward-looking statements are based on assumptions that are unavoidably and inherently

9    imprecise.  Actual results, performance or achievements will likely differ materially from those

10    contemplated, express or implied by the forward-looking statements contained in this Disclosure

11    Statement.  Plan Proponents undertake no obligation to update or revise any forward-looking

12    statements contained in this Disclosure Statement, whether as a result of new developments or

13    otherwise.

14           The Disclosure Statement should not be construed as meaning that Debtor, Plan

15    Proponents, other creditors, the Liquidating Agent or other parties in interest will not object to

16    your claim or interest or will not pursue any right or action against you.  Instead, for the purpose

17    of deciding how to vote on the Plan, if your claim is not expressly allowed under the Plan, you

18    should assume that the Debtor, Plan Proponents, other creditors, the Liquidating Agent or other

19    parties in interest will (A) object to your claim and (B) assess all setoffs, recoupments, rights to

20    subordinate or affirmative claims that the Debtor may have with respect to you and/or your

21    claims against the Debtor.

22        **D.**    **Summary Of Entities Entitled To Vote On The Plan**

23           Only holders of Allowed Claims in **Class 1B and 2B** and holders of Allowed

24    Equity Interests in **Class 3** (collectively, the "Voting Classes") are entitled to vote on the Plan

25    because such Classes are: (i) impaired under the Plan within the meaning of section 1124 of the

26    Bankruptcy Code; and (ii) may receive distributions of property under the Plan and therefore are

Case: 04-53874   Doc# 282   Filed: 03/04/05   Entered: 03/04/05 17:10:16   Page 11 of
49

1 not deemed to have rejected the Plan under Section 1126(g) of the Bankruptcy Code. **Class 1A**

2 is not impaired under the Plan, and holders of Allowed Claims in **Class 1A** are deemed to have

3 accepted the Plan and therefore are not entitled to vote on the Plan. Members of the non-voting

4 **Class 1A**, however, may object to confirmation of the Plan. Under the Plan, Administrative and

5 Tax Claims are unclassified and are not entitled to vote. (*See* Sections III.A and IV.A for a

6 description of the various Classes of Claims and Equity Interests and of the treatment of such

7 Claims and Equity Interests under the Plan, and for an explanation of impairment and of the

8 entities that are entitled to vote on the Plan.)

9 The Bankruptcy Court may confirm the Plan so long as one Class of impaired

10 Claims has voted to accept the Plan (without counting the votes of any insiders whose Claims are

11 classified within that Class) and if certain statutory requirements are met as to both

12 nonconsenting members within a consenting Class and as to dissenting Classes. A Class of

13 Claims has accepted the Plan only when at least one-half in number <u>and</u> at least two-thirds in

14 amount of the Allowed Claims actually voting in that Class vote in favor of the Plan. A Class of

15 Equity Interests has accepted the Plan when at least two-thirds in amount of the allowed Equity

16 Interests actually voting in that Class vote in favor of the Plan.

17 In the event of a rejection of the Plan by one or more Voting Classes, Plan

18 Proponents intend to request that the Bankruptcy Court confirm the Plan in accordance with

19 section 1129(b) of the Bankruptcy Code, which permits confirmation notwithstanding such

20 rejection if the Bankruptcy Court finds that the Plan "does not discriminate unfairly" and is "fair

21 and equitable" with respect to the rejecting Classes.

22 **E.** **Voting Procedures, Balloting Deadline, Confirmation Hearing,**
**And Other Important Dates, Deadlines And Procedures**

23

**1.** **Voting Procedures And Deadlines**

24
A ballot (which includes detailed voting instructions) is enclosed herewith **as**

25
**Exhibit C** for all known holders of impaired Claims or Equity Interests in the Voting Classes to

26

SF/21606462.4

1  use in voting on the Plan.  To vote on the Plan, indicate on the enclosed ballot that you accept or

2  reject the Plan, provide the requested information, sign your name and mail the ballot in the

3  envelope provided for this purpose.

4        In order to be counted, ballots must be completed, signed and returned in the

5  enclosed envelope to **Lisa Large, Bingham McCutchen LLP, Three Embarcadero Center,**

6  **Suite 1800, San Francisco, CA 94111** (the "Ballot Tabulator"), so that it is **actually received**

7  by the Ballot Tabulator no later than the Balloting Deadline (as defined below).  Ballots do not

8  constitute proofs of Claim or Equity Interests and must not be returned directly to the Debtor,

9  counsel for the Debtor, or the Bankruptcy Court.  Readers are encouraged to read and review

10  their ballots carefully.

11        *All ballots, including ballots transmitted by facsimile, must be completed,*

12  *signed, returned to, and actually received by the Ballot Tabulator by not later than [DATE TO*

13  *BE DETERMINED BY COURT], at 4:00 p.m. Pacific Standard Time (the "Balloting*

14  *Deadline").  Ballots received after the Balloting Deadline, and ballots returned directly to the*

15  *Debtor, counsel for the Debtor, the Bankruptcy Court, or any entity other than the Ballot*

16  *Tabulator, will not be counted in connection with confirmation of the Plan.*

17        To be counted for purposes of voting on the Plan, all of the information requested

18  on the Ballot must be provided.  Be sure to check the appropriate box entitled "Accept the Plan"

19  or "Reject the Plan."  If your ballot is not properly completed, signed and returned as described,

20  it will not be counted.  Ballots that are properly executed, but that fail to indicate whether the

21  voting party accepts or rejects the Plan will constitute abstentions by such party with respect to a

22  vote on the Plan.  Abstentions will not be counted as either acceptances or rejections of the Plan.

23  Failure to deliver a duly completed and signed ballot also will constitute an abstention with

24  respect to a vote on the Plan.  Because abstentions will have no effect on voting with respect to

25  Plan, it is extremely important that you indicate whether you accept or reject the Plan on the

26  ballot.

Case: 04-53874    Doc# 282    Filed: 03/04/05    Entered: 03/04/05 17:10:16    Page 13 of
49

SF/21606462.4

1    If your ballot is damaged or lost, you may request a replacement by sending a

2    written request to the Ballot Tabulator, at the address set forth above.

3         **2.      Withdrawal of Votes on the Plan**

4         The solicitation of acceptances of the Plan will expire on the Balloting Deadline.

5    A properly submitted ballot may be withdrawn by delivering a written notice of withdrawal to

6    the Ballot Tabulator at the address set forth on the ballot at any time prior to the Balloting

7    Deadline.  Thereafter, withdrawal may be effected only with the approval of the Bankruptcy

8    Court, pursuant to Federal Rule of Bankruptcy Procedure 3018(a).

9         To be valid, a notice of withdrawal must (i) specify the name of the holder who

10   submitted the votes on the Plan to be withdrawn; (ii) contain the description of the Claim or

11   Equity Interest to which it relates and the amount of such Claim or number of shares represented

12   by such Equity Interest; and (iii) be signed by the holder in the same manner as the ballot.  Plan

13   Proponents reserve the right to contest the timeliness or validity of any such withdrawals of votes

14   on the Plan.

15        In addition to withdrawal as specified above, any holder who has previously

16   submitted to the Ballot Tabulator prior to the Balloting Deadline a properly completed ballot

17   may revoke and change such vote by submitting to the Ballot Tabulator prior to the Balloting

18   Deadline a subsequently properly-completed ballot for acceptance or rejection of the Plan.  In the

19   case where more than one timely, properly-completed ballot is received, only the ballot that

20   bears the latest date will be counted for purposes of determining whether acceptances sufficient

21   to seek Confirmation of the Plan have been received.

22        **3.      Date Of The Confirmation Hearing And Deadlines For
              Objection To Confirmation Of The Plan**

23        The hearing to determine whether the Bankruptcy Court will confirm the Plan (the

24   "Confirmation Hearing") will commence on **[DATE AND TIME TO BE DETERMINED BY**

25   **COURT]** in the Courtroom of the Honorable Arthur S. Weissbrodt, United States Bankruptcy

26

DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF LIQUIDATION FOR EXCEL INNOVATIONS,
INC. PROPOSED BY INDIVOS CORPORATION AND SOLIDUS NETWORKS, INC.

Case: 04-53874    Doc# 282    Filed: 03/04/05    Entered: 03/04/05 17:10:16    Page 14 of
49
SF/21606462.4

1　Judge for the Northern District of California, Courtroom 3099, 280 South First Street, San Jose,

2　California.  The Confirmation Hearing may be continued from time to time and day to day by

3　announcement in open Court without further notice.  If the Bankruptcy Court confirms the Plan,

4　it will enter the Confirmation Order.

5　　　　Any objections to Confirmation of the Plan must be in writing and must be filed

6　with the Bankruptcy Court and served on the following entities (collectively, the "Notice

7　Parties") so as to be received by no later than **[DATE TO BE DETERMINED BY COURT]** at

8　4:00 p.m. Pacific Standard Time:

| | |
|---|---|
| Excel Innovations, Inc.<br>2880 Zanker Road, Suite 203<br>San Jose, CA  95134 | John Wesolowski, Esq.<br>Office of the U.S. Trustee<br>280 South First Street<br>San Jose, CA  95113 |
| Charles E. Logan, Esq.<br>Law Offices of Charles E. Logan<br>95 South Market Street<br>San Jose, CA  95113 | John T. Hansen, Esq.<br>Nossaman, Guthner, Knox & Elliott<br>50 California Street, 34th Floor<br>San Francisco, CA  94111-4799 |
| Jonathan H. Bornstein, Esq.<br>Bornstein & Bornstein<br>2590 Geary Blvd.<br>San Francisco, CA 94115-3318 | Buckmaster de Wolf, Esq.<br>Howrey Simon Arnold & White<br>525 Market Street, Suite 3600<br>San Francisco, CA 94105-2708 |
| Bartlett & Leader-Picone LLP<br>Malcolm Leader-Picone, Esq.<br>AimMinh T. Nguyen, Esq.<br>2201 Broadway, Suite 803<br>Oakland, CA  94612 | Randy Michelson, Esq.,<br>Bingham McCutchen LLP<br>Three Embarcadero Center, Suite 1800<br>San Francisco, CA 94111 |
| Stan Caplan<br>P.O. Box 880584<br>San Diego, CA  92168 | Stephen L. Berger<br>7947 Racoon Hollow Court<br>Pleasanton, CA  94588 |

21

22　　　　Objections that are not timely filed and served may not be considered by the

23　Bankruptcy Court.  Federal Rule of Bankruptcy Procedure 3020 governs the form of any such

24　objection.

25　**F.　　Additional Information**

26　　　　If you have any questions about the procedures for voting on the Plan, desire

Case No. 04-53874

SF/21606462.4

1   another copy of a ballot, or seek further information about the timing and deadlines with respect

2   to confirmation of the Plan, please write to the Ballot Tabulator at the address set forth above.

3   The Ballot Tabulator, however, cannot and will not provide holders of Claims or Equity Interests

4   with any advice, including advice regarding how to vote on the Plan or the legal effect that

5   Confirmation of the Plan will have upon Claims against or Equity Interests in the Debtor.

6   **II.      BACKGROUND INFORMATION**

7       **A.      The Debtor's General Business Operations Prior to the**
                     **Petition Date**

8

9          In about 1989, Ned Hoffman founded Omnilock, Inc. ("Omnilock") and Sports-

10  Mitt International, Inc. ("Sports-Mitt").  On November 30, 1995, Omnilock merged into Sports-

11  Mitt.  On April 12, 1996, Sports-Mitt changed its name to Excel.  According to a November

12  2004 business plan filed by the Debtor in the Bankruptcy Case on November 30, 2004

13  ("November 2004 Business Plan"), Excel is in the business of patenting and licensing certain

14  inventions, including consumer products in sports and fitness, housewares and homecare

15  accessories, automotive safety, and computer-based financial services systems.  Excel claims that

16  it has licensed its inventions to Nike, Warnaco, Revlon/New World Media, Bollinger Industries,

17  Telebrands, Benneton, and Bell Industries.

18         In the almost ten (10) years prior to the Petition Date, the Debtor had no more

19  than two employees at any given time.  The majority of the Debtor's operations were located in

20  leased office space located in San Jose, California.  For approximately two years prior to the

21  Petition Date, the Debtor leased office space at 2570 North First Street in San Jose, California.

22  According to the Statement of Financial Affairs filed by the Debtor in the Bankruptcy Case on

23  July 30, 2004 (the "Statement of Financial Affairs"), the landlord terminated the lease on or

24  about the Petition Date due to unpaid rent.  For a period of time prior to the Petition Date, the

25  Debtor also leased office space in San Francisco, California.  At some point after the Petition

26  Date, the Debtor began renting office space at 2880 Zanker Road, Suite 203 in San Jose,

11                                                                    Case No. 04-53874

Case: 04-53874    Doc# 282    Filed: 03/04/05    Entered: 03/04/05 17:10:16    Page 16 of
49
SF/21606462.4

1   California.

2         Some time in the 1996-1997 time frame, the Debtor considered selling its

3 business in its entirety to a third party and hired Bay Street Group to provide investment banking

4 and consulting services in order to assist in its efforts to do so. The Debtor was unable, however,

5 to find a buyer.

6         From 1997 to 2002, the Debtor had no apparent business operations and generated

7 no revenue.

8         From approximately November 2002 to the Petition Date, the Debtor's primary

9 activity was litigation.  In its Statement of Financial Affairs, the Debtor identifies itself as a party

10 to twelve (12) lawsuits within the year preceding the Petition Date.  The Debtor was the plaintiff

11 or counter-claimant in at least ten (10) of those lawsuits, and it dismissed voluntarily nine (9) of

12 them prior to the Petition Date.  According to the Debtor's Schedules of Assets and Liabilities

13 and the Statement of Financial Affairs: (1) other than Excel's debt to Plan Proponents, and with

14 the exception an $11,070 credit card debt and rent of approximately $15,176, the Debtor's debts

15 to its twenty (20) largest creditors arise out of these lawsuits (attorneys fees, copy services, court

16 reporters, and the American Arbitration Association); and (2) approximately two-thirds (2/3) of

17 the total amounts disbursed by the Debtor in the ninety (90) days prior to the Petition Date was

18 paid to the Debtor's attorneys.

19       **B.**    **Legal Proceedings**

20         As of the Petition Date, four (4) lawsuits in which the Debtor is a party were

21 pending.  As a result of the filing of the Debtor's Chapter 11 petition in the Bankruptcy Case, all

22 four cases (described below) were stayed pursuant to section 362 of the Bankruptcy Code.

23       **1.**    **The Arbitration**

24         On June 12, 2003, Indivos instituted an arbitration before the American

25 Arbitration Association against the Debtor and Ned Hoffman ("Hoffman"), the Debtor's then-

26 President, for their alleged breaches of a June 2000 settlement agreement between Indivos and

Case: 04-53874   Doc# 282   Filed: 03/04/05   Entered: 03/04/05 17:10:16   Page 17 of
49
SF/21606462.4

1    Hoffman (*Indivos Corporation v. Ned Hoffman, Excel Innovations, Inc. d/b/a Excel Corporation*,

2    American Arbitration Association Case No. 74 199 00671 03 SAT) (the "Arbitration").

3    Hoffman raised several counterclaimed against Indivos.  On May 14, 2004, the Arbitrator ruled

4    that Hoffman was liable to Indivos for certain of his breaches of his obligations under the

5    settlement agreement, and that Excel was liable as Hoffman's alter ego for certain of those

6    breaches.  The Arbitration was stayed by the automatic stay in the Bankruptcy Case and *In re*

7    *Hoffman*, No. 04-11488 (Bankr. N.D.Cal., closed Nov. 10, 2004).  As a result, on the Petition

8    Date, there remained outstanding issues in the Arbitration, including (1) Excel's and Hoffman's

9    liability for additional breaches, and (2) Indivos' damages as a result of Hoffman's and Excel's

10   conduct.

11           The Debtor's 1,998,000 shares of Indivos Series A Preferred Stock (the "Stock")

12   (and any and all present and future proceeds from such Stock) were pledged as security for

13   Hoffman's performance under the June 2000 settlement agreement, which stock was converted

14   to cash upon the July 23, 2003 merger of Indivos and Solidus.  Plan Proponents contend that they

15   have a perfected security interest in the Debtor's merger proceeds which would be used to satisfy

16   Excel's and Hoffman's already-determined liability in the Arbitration.  The Debtor has indicated,

17   however, that it believes Plan Proponents' security interest in the Debtor's proceeds from the

18   Indivos-Solidus merger is voidable pursuant to 11 U.S.C. § 547 or § 548, which allegation Plan

19   Proponents deny.

20         2.      **The Patent Case**

21              a.     **Claims Asserted**

22           On July 7, 2003, the Debtor filed a complaint in the United States District Court

23   for the Northern District of California ("District Court") against Plan Proponents alleging breach

24   of a patent licensing agreement and infringement on fifteen (15) patents in the field of tokenless

25   biometric computer systems (*Excel Innovations, Inc. v. Indivos Corporation and Solidus*

26   *Networks, Inc.*, Case No. 03-03125 (N.D.Cal.) (the "Patent Case").  Plan Proponents asserted

Case: 04-53874   Doc# 282   Filed: 03/04/05   Entered: 03/04/05 17:10:16   Page 18 of
49
SF/21606462.4

1 numerous counterclaims against the Debtor, Hoffman and Aviv, LLC, including claims for

2 declaratory relief with respect to ownership of the patents, patent infringement and inducing

3 infringement of the same fifteen (15) patents that the Debtor contended Plan Proponents were

4 infringing, intentional interference with prospective economic advantage, violation of § 43(a) of

5 the Lanham Act (15 U.S.C. § 1125(a)), business disparagement/slander of title, and conspiracy to

6 commit the other alleged violations.  In response to Plan Proponents' counterclaims, Excel

7 asserted new counterclaims against Plan Proponents for declaratory relief with respect to patent

8 ownership, breach of contract (failure of consideration), breach of contract (frustration of

9 purpose), breach of contract (breach of fiduciary duty), and fraud.  Excel and Plan Proponents

10 both moved for partial summary judgment as to ownership of the patents.

11 b.    **Court Rules Plan Proponents Own the Patents**

12 On May 27, 2004, the District Court held, in a 50-page decision denying the

13 Debtor's motion and granting Plan Proponents' motion for partial summary judgment, that Plan

14 Proponents, not the Debtor, own the following patents:  United States Patent Nos. 5,613,012;

15 5,615,277; 5,764,789; 5,802,199; 5,805,719; 5,838,812; 5,870,723; 6,012,039; 6,366,682;

16 6,230,148; 6,269,348; 6,192,142; 6,154,879; 6,397,198; 6,581,042; 5,737,439; 6,594,376;

17 6,591,002; 5,982,914; 6,131,464; 6,411,728; D425,873; Australia Patent No. 750174; and

18 Mexico Patent No. 205149 (collectively, the "Patents").  The remaining claims of Plan

19 Proponents, including claims for infringement and the amount of their damages by reason of that

20 infringement, remained to be resolved by the District Court at the time the Debtor filed its

21 bankruptcy petition, staying the Patent Case pursuant to section 362 of the Bankruptcy Code.

22 The Debtor has indicated that it intends to appeal the District Court's May 27, 2004 ruling.

23 3.    **The Santa Clara Case**

24 On May 27, 2004, Excel and Hoffman (in their own names and purportedly on

25 behalf of "former shareholders of Indivos Corporation") filed a complaint in Santa Clara

26 Superior Court against M. Robert Goldberg, William Ruh, Larry Ginsburg and the so-called

14

Case: 04-53874    Doc# 282    Filed: 03/04/05    Entered: 03/04/05 17:10:16    Page 19 of
49
SF/21606462.4

1  "Indivos Former Stockholder Escrow Fund," alleging claims for breach of contract, fraud,

2  conversion, breach of fiduciary duty, constructive trust, removal of trustee, appointment of court

3  trustee or receiver, an accounting, injunctive relief and unfair business practices (*Ned Hoffman*

4  *and Excel Innovations, Inc. v. Indivos Former Stockholder Escrow Fund, M. Robert Goldberg,*

5  *William Ruh, and Larry Ginsburg,* No. 104CV020457 (Santa Clara County Superior Court) (the

6  "Santa Clara Case").  On June 2, 2004, the Court denied Excel's and Hoffman's ex parte

7  application for a temporary restraining order.  Two weeks later, the Santa Clara Case was stayed

8  by the filing of the Debtor's petition in this Bankruptcy Case pursuant to section 362 of the

9  Bankruptcy Code.

10                     **4.       The Napa Case**

11                     On October 9, 2003, David Mendelsohn ("Mendelsohn") filed a complaint against

12  the Debtor for breach of contract and common counts for services rendered, seeking $178,160 in

13  damages, plus interest and attorneys fees, for fees Mendelsohn claims are owed him for

14  consulting services he provided for the Debtor (*David Mendelsohn v. Excel Innovations, Inc.,*

15  No. 26-23056 (Napa County Superior Court) (the "Napa Case").  On or about October 31, 2003,

16  the Debtor filed a cross-complaint against Mendelsohn and Hal Silen ("Silen") for, among other

17  things, breach of fiduciary duty, unfair competition, and unfair business practices.  On or about

18  March 4, 2004, Mendelsohn and Silen filed a cross-complaint against the Debtor and Ned

19  Hoffman for indemnity.  The Napa Case was stayed by the filing of the Debtor's petition in the

20  Bankruptcy Case pursuant to section 362 of the Bankruptcy Code.

21           **C.       Historical and Current Financial Information**

22                     According to the Schedules of Assets and Liabilities (the "Schedules") and the

23  Statement of Financial Affairs filed by the Debtor in the Bankruptcy Case on July 30, 2004, the

24  Debtor had no income for the twenty-four (24) months preceding the Petition Date and, as of the

25  Petition Date, had no cash on hand and no money in any checking, savings or other financial

26  account.  A third party (Hoffman's wife) paid a retainer to the Debtor's initial bankruptcy

DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF LIQUIDATION FOR EXCEL INNOVATIONS,
INC. PROPOSED BY INDIVOS CORPORATION AND SOLIDUS NETWORKS, INC.

SF/21606462.4

1  counsel, Lanahan & Reilley LLP, and another third party (Hoffman's brother) paid a retainer to

2  the Debtor's current bankruptcy counsel, Law Offices of Charles E. Logan.

3          According to the most recent Monthly Operating Report filed by the Debtor in the

4  Bankruptcy Case on January 13, 2005, since the Petition Date, the Debtor has had no revenue, no

5  cash from any sales, and only $5,341 in total cash receipts.  As of December 31, 2004, the

6  Debtor had only $529 in cash.  All Monthly Operating Reports filed by the Debtor in the

7  Bankruptcy Case as of March 4, 2004 are attached hereto as **Exhibit D.**

8      **D.**      **The Debtor's Financial Difficulties and Significant Events**
                 **Leading To the Commencement of the Bankruptcy Case**
9

10         According to the Debtor, it filed its Chapter 11 petition as a result of the adverse

rulings against it in the Patent Case and the Arbitration, described in Section II.B.1 and II.B.2.

11

12     **E.**      **Proceedings In The Bankruptcy Case**

13         The Debtor filed its voluntary petition for relief under chapter 11 of the

Bankruptcy Code in the Northern District of California on June 17, 2004.  The Bankruptcy Case

14 is assigned to the Honorable Arthur S. Weissbrodt, United States Bankruptcy Judge for the

15 Northern District of California.

16

17     **1.**      **Filing Of Schedules And Establishment Of Claims Bar**
                 **Date**

18         The Debtor filed the Schedules and Statement of Financial Affairs on July 30,

19 2004.  The Schedules list assets totaling $202,233,000.  The Debtor discloses in its Schedules

20 that it has two assets that account for substantially all of the value of its assets:  (1)  the patents at

21 issue in the Patent Case, and (2) the stock proceeds it claims are due under the Indivos-Solidus

22 merger.  The Debtor filed an amendment to schedule F in December 2004, scheduling a Claim

23 by Office Depot Credit Plan in the amount of $3,458.71.  The Schedules list liabilities totaling

24 approximately $367,295.75  as of the Filing Date.

25         The Court established October 12, 2004 as the bar date and deadline for the filing

26 of proofs of Claim against the Debtor.  A Claim filed after the applicable bar date will be

DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF LIQUIDATION FOR EXCEL INNOVATIONS,
INC. PROPOSED BY INDIVOS CORPORATION AND SOLIDUS NETWORKS, INC.

SF/21606462.4

1   considered late and may be disallowed pursuant to Bankruptcy Code section 502(b)(9). The bar

2   date deadline for Equity Interests in the Debtor has not been established. Claimants filed

3   approximately nine (9) proofs of Claim, which together with the scheduled Claims, represent no

4   more than approximately $480,000 in asserted Allowed Claims against the Debtor. As of the bar

5   date, Claims have been filed or scheduled in the Debtor's Schedules (other than Claims

6   scheduled as contingent, unliquidated, or disputed) in the following amounts:

7               a. **Secured Claims**

8         Bornstein and Bornstein filed a proof of Claim against the Debtor arising from the

9   Debtor's obligations for legal fees and costs in the amount of $21,092.52, to the extent such

10   obligations are secured by any of the Debtor's assets.

11         Plan Proponents assert a secured claim in an unliquidated amount, exclusive of

12   interest, costs and attorneys fees, arising from the Debtor's breach of its obligations under an

13   agreement it entered into with Plan Proponents.

14             b. **Non-Priority General Unsecured Claims**

| | |
|---|---|
| American Arbitration Association | $11,831 |
| David Mendelsohn | $277,100.35 |
| Demory & Grigg | $10,000 |
| Harold Silen | $11,302.40 |
| Howrey Simon Arnold & White | $75,644.31 |
| Plan Proponents | unliquidated |
| Knobbe, Martens, Olson & Bear LLP | $7,211 |
| Office Depot Credit Plan | $3,458.71 |
| TechZecs, LLC | $22,500 |
| The Deckard Law Firm | $19,835.54 |
| Wells Fargo Payments -- Regulus | $11,070 |
| Bornstein and Bornstein | unknown |

23           2. **Adversary Proceeding**

24         On June 18, 2004, the Debtor filed an adversary complaint against Plan

25   Proponents and U.S. Bank National Association aka U.S. Bank ("U.S. Bank"), seeking turnover

26   of the merger proceeds attributable to its 1,998,000 shares of Indivos Series A Preferred Stock as

Case: 04-53874   Doc# 282   Filed: 03/04/05   Entered: 03/04/05 17:10:16   Page 22 of 49
SF/21606462.4

1 a result of the July 23, 2003 merger between Indivos and Solidus. Plan Proponents and U.S.

2 Bank have answered the Debtor's adversary complaint, denying the Debtor's entitlement to those

3 funds and raising affirmative defenses to the Debtor's claim. As discussed in Section II.E.4, the

4 Debtor has not retained special counsel to represent it in the Adversary.

5 **3. The Debtor's Future Business Plans**

6 The Debtor contends that in addition to pursuing adversary proceedings against

7 Plan Proponents, and appealing the District Court's ruling in the Patent Case, it intends to

8 generate revenue based on its SuperVision for Automotive Aftermarket ("SuperVision") and

9 Xcel Check-Payment Processing Systems ("Xcel"), as described in the November 2004 Business

10 Plan. According to the Debtor, (1) SuperVision is an after-market automotive accessory that

11 provides easy, accurate visibility of "blind spots" for drivers and (2) Xcel is a system for

12 recurring remittance payments that simplifies the process for payers, payees, and financial

13 institutions that process the payments. Since the Petition Date, neither of these inventions has

14 generated any revenue or outside investments in the Debtor.

15 **4. Retention of Professionals**

16 On October 28, 2004, the Court approved the employment of and allowed the

17 payment of a $25,000 retainer to the Law Offices of Charles E. Logan as counsel to the Debtor.

18 As of March 4, 2005, the Debtor had not retained special counsel to represent it in

19 the Patent Case, the Arbitration or the Adversary. On October 20, 2004, the Debtor filed an

20 application to employ Lanahan & Reilley as special counsel in those matters, but that application

21 was denied by the Bankruptcy Court in an Order entered January 16, 2004.

22 **5. Motions for Relief from Stay**

23 On October 20, 2004, Plan Proponents filed a motion for relief from stay with

24 respect to the Patent Case and the Arbitration. On February 22, 2005, Plan Proponents withdrew

25 their motion without prejudice.

26 On February 25, 2005, the Debtor filed a motion for relief from stay, requesting

Case: 04-53874    Doc# 282    Filed: 03/04/05    Entered: 03/04/05 17:10:16    Page 23 of
49
SF/21606462.4

that the Bankruptcy Court grant it limited relief from stay to allow it to request that the District

Court certify for appeal to the Ninth Circuit Court of Appeals, under 28 U.S.C. § 1292(b), the

Order Denying Plaintiff's Motion and Granting Defendants' Motion for Partial Summary

Judgment on the Issue of Patent Ownership, entered on May 27, 2004 in the Patent Case.  The

Debtor's motion is scheduled to be heard on March 25, 2004.  Plan Proponents intend to oppose

the Debtor's motion.

### 6. Motion to Appoint Trustee

On October 21, 2004, Plan Proponents filed a motion requesting the Court appoint

a Chapter 11 trustee or, in the alternative, to dismiss or convert the case to one under Chapter 7.

On January 31, 2004, the Court entered an Order denying Plan Proponents' motion without

prejudice.

### 7. Expiration of Exclusive Period to File Plan of Reorganization

Pursuant to section 1121(b) of the Bankruptcy Code, a debtor has the exclusive

right to file a plan of reorganization within the first 120 days after the commencement of a

chapter 11 case (the "Exclusive Period").  Pursuant to section 1121(d) of the Bankruptcy Code,

the Bankruptcy Court may "for cause" extend the Exclusive Period.  By Order Approving

Extension of Exclusivity Period to File Plan and to Confirm Plan (11 U.S.C. § 1121), dated

November 12, 2004, the Bankruptcy Court extended the Debtor's Exclusive Period to February

12, 2005.  The Exclusive Period has expired.

## III. SUMMARY OF PLAN

### A. Description of the Plan

The Discussion of the Plan set forth below is qualified in its entirety by reference

to the more detailed provisions set forth in the Plan and its exhibits, the terms of which are

controlling.  Holders of Claims and Equity Interests and other interested parties are urged to read

the Plan and the exhibits thereto when deciding whether to accept or reject the Plan.  If any

Case: 04-53874   Doc# 282   Filed: 03/04/05   Entered: 03/04/05 17:10:16   Page 24 of
49
SF/21606462.4

1    inconsistency exists between this summary and the Plan, the terms of the Plan shall control.

2         In summary, the Plan generally provides that, on the Effective Date of the Plan,

3    the Debtor will cease operations and the Estate will remain in existence until the entry of a final

4    decree.  Except as otherwise provided in the Plan, the Liquidating Agent will sell and reduce to

5    Cash all remaining assets of the Estate (except for those claims released by the Debtor in the

6    Settlement) and distribute such Cash in the manner provided for in the Plan.

7              **1.      Non-Classified Claims**

8         Certain types of Claims are not placed into voting classes; instead they are

9    unclassified.  They are not considered impaired and they do not vote on the Plan because they are

10   automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such,

11   Plan Proponents have not placed the following claims in a class.  The treatment of these claims is

12   described in Article II of the Plan and as provided below:

13             a.      **Administrative Claims**

14        General administrative claims are claims constituting a cost or expense of

15   administration of the Bankruptcy Case allowed under section 507(a) of the Bankruptcy Code,

16   including claims held by persons entitled to payment pursuant to section 503 of the Bankruptcy

17   Code.  Such claims include any actual and necessary costs and expenses of preserving the estate

18   of the Debtor, any actual and necessary costs and expenses of operating the business of the

19   Debtor, any indebtedness or obligations incurred or assumed by the Debtor in connection with

20   the conduct of its business or the acquisition or lease of property or the rendition of services, any

21   allowance of compensation and reimbursement of expenses to the extent allowed by a Final

22   Order of the Bankruptcy Court under section 330 of the Bankruptcy Code, and fees or charges

23   assessed against the Estate under section 1930 of title 28 of the United States Code.

24        The holders of Allowed Administrative Claims shall receive (1) Cash from the

25   Plan Fund in the amount of such Allowed Claims on the later of (a) thirty (30) days following the

26   Effective Date or (b) the date such Claims become Allowed Claims; (2) payment in the ordinary

20                                                          Case No. 04-53874

x

x

DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF LIQUIDATION FOR EXCEL INNOVATIONS,
INC. PROPOSED BY INDIVOS CORPORATION AND SOLIDUS NETWORKS, INC.

Case: 04-53874    Doc# 282    Filed: 03/04/05    Entered: 03/04/05 17:10:16    Page 25 of
49
SF/21606462.4

1   course of business; or (3) Cash from the Plan Fund at such time and in such amounts as the

2   Liquidating Agent and the holders of such Allowed Claims shall agree.

3                         b.     **Professional Fees**

4           Professionals (i) employed by the Debtor, or (ii) employed in connection with the

5   Bankruptcy Case shall receive Cash from the Plan Fund or other payment by the Liquidating

6   Agent in the amount awarded to such professionals by the Bankruptcy Court in accordance with

7   Final Orders entered by the Bankruptcy Court pursuant to section 330 of the Bankruptcy Code.

8   Payment of such amounts shall be made by the Liquidating Agent within twenty (20) days from

9   the date that the orders approving such payment become Final Orders or at such time and in such

10   amounts as the Liquidating Agent and the professional shall agree.

11                         c.     **U.S. Trustee Fees**

12           All U.S. Trustee fees payable under 28 U.S.C. section 1930 before the Effective

13   Date, if any, shall be paid on or prior to the Effective Date.  After the Effective Date, the

14   Liquidating Agent shall pay all required post-confirmation U.S. Trustee fees when due and

15   owing.

16             2.     **Administrative Claims Bar Date**

17                a.     **General Administrative Claims**

18           All requests for payment of Non-Classified Claims, other than Claims by

19   professionals, must be filed with the Bankruptcy Court and served upon the Liquidating Agent

20   no later than thirty (30) days after the mailing of Notice of the Effective Date.  Holders of Non-

21   Classified Claims that do not file such requests by such bar date shall be forever barred from

22   asserting such Claims against the Debtor, the Estate or any of its property.  Notwithstanding the

23   foregoing, nothing provided herein shall prevent the Liquidating Agent from paying any Non-

24   Classified Claim that was not timely filed but that was incurred in the ordinary course of

25   business by the Debtor and is not disputed as to amount or liability.

26

DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF LIQUIDATION FOR EXCEL INNOVATIONS,
INC. PROPOSED BY INDIVOS CORPORATION AND SOLIDUS NETWORKS, INC.

SF/21606462.4

1                     b.     **Professionals**

2                   All professionals requesting compensation or reimbursement of expenses pursuant

3 to sections 327, 328, 330, 331, and 503(b) of the Bankruptcy Code for services rendered before

4 the Effective Date (including, without limitation, any compensation requested by any

5 professionals for making a substantial contribution in the Bankruptcy Case) shall file with the

6 Bankruptcy Court and Liquidating Agent, counsel for Plan Proponents, the Debtor, counsel for

7 the Debtor, and the United States Trustee an application for allowance of compensation and

8 reimbursement of expenses no later than forty-five (45) days after the mailing of the Notice of

9 the Effective Date. Objections to such applications of professional for compensation or

10 reimbursement of expenses must be filed and served on the professionals that are the subject of

11 the objection, the Liquidating Agent, counsel for Plan Proponents, the Debtor, counsel for the

12 Debtor, and the United States Trustee no later than sixty (60) days after the mailing of the Notice

13 of the Effective Date, unless the professional that is the subject of the objection agrees in writing

14 to extend the objection deadline. The Bankruptcy Court shall disallow any request for payment

15 of a Non-Classified Claim filed by any professional not employed pursuant to an order of the

16 Bankruptcy Court.

17                     c.     **Priority Tax Claims**

18                   Priority tax claims are described by section 507(a)(8) of the Bankruptcy Code.

19 No priority tax claims have been asserted against the Estate and Plan Proponents are not aware of

20 any unsecured priority claims against the Estate.

21           **3.**     **Classified Claims**

22                   The Plan divides Creditors into Classes. Creditors with similar Claims are placed

23 in the same Class. There are four (4) Classes of Claims and one (1) Class of Equity Interests

24 under the Plan as follows:

25                     a.     **Class 1 Secured Claims**

26                   Class 1 consists of all Allowed Secured Claims against the Debtor that have not

DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF LIQUIDATION FOR EXCEL INNOVATIONS,
INC. PROPOSED BY INDIVOS CORPORATION AND SOLIDUS NETWORKS, INC.

Case: 04-53874    Doc# 282    Filed: 03/04/05    Entered: 03/04/05 17:10:16    Page 27 of 49

SF/21606462.4

been paid, released or otherwise satisfied prior to the Effective Date. Each Secured Claim in Class 1 shall be considered to be its own separate sub-class within Class 1, as set forth below.

(1)  **Class 1A (Claim of Bornstein and Bornstein)**

Class 1A is comprised of the Claim of Bornstein and Bornstein arising from the Debtor's obligations for legal fees and costs in the amount of $21,092.52, to the extent such obligations are secured by any of the Debtor's assets. The Claim will be satisfied in full, to the extent of the value of the collateral securing Bornstein and Bornstein's interest in the Debtor's assets, and will be paid within thirty (30) days after the value of the collateral, if any, is determined pursuant to a Final Order of the Bankruptcy Court. To the extent that Bornstein and Bornstein's Claim exceeds the value of its collateral, its Claim will be treated as an Allowed General Unsecured Claim under Class 2B. Class 1A is unimpaired under the Plan.

(2)  **Class 1B (Plan Proponents' Claim)**

Plan Proponents assert a Claim in an unliquidated amount, exclusive of interest, costs and attorneys fees, arising from the Debtor's breach of its obligations under an agreement it entered into with Plan Proponents. That claim arising from the Debtor's breach of the agreement is secured by the 1,998,000 shares of Indivos Series A Preferred Stock, and any and all present or future proceeds from such stock, issued in the name of Excel.

Excel will enter into a Settlement Agreement with Plan Proponents, M. Robert Goldberg, William Ruh and Larry Ginsburg (the "Settlement"), whereby Plan Proponents will pay the Estate $500,000 and will not be paid on account of their Allowed Claims (including both their secured and unsecured claims against the Debtor) in exchange for a mutual release between Indivos, Solidus, M. Robert Goldberg, William Ruh and Larry Ginsburg on the one hand, and the Debtor on the other, whereby the parties mutually release and forever discharge each other from any and all claims which any of them ever had, now has, or may later claim to have against the other, pursuant to and with the exceptions set forth in the terms of the Settlement that is attached

DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF LIQUIDATION FOR EXCEL INNOVATIONS, INC. PROPOSED BY INDIVOS CORPORATION AND SOLIDUS NETWORKS, INC.

SF/21606462.4

1 hereto as **Exhibit B**.  Under the Settlement, the Debtor forever and irrevocably transfers to

2 Indivos and Solidus, and disclaims any and all right, title and interest of any kind, direct or

3 indirect, in the 1,998,000 shares of Indivos Series A Preferred Stock (the "Stock"), and any and

4 all present or future proceeds from such Stock, issued in the name of Excel, which Stock is the

5 subject of a Pledge Agreement between Indivos and Hoffman, dated as of June 16, 2000.  The

6 Settlement also includes an express acknowledgement that Plan Proponents own all the

7 technology at issue in the Patent Case.  The consideration to be paid by Plan Proponents under

8 the Settlement will produce funds to pay, in part, the Allowed Claims against the Estate.  Plan

9 Proponents' claim is impaired under the Plan.

10                          b.      **Class 2 Unsecured Claims**

11                                  (1)      **Class 2A Unsecured Priority Claims**

12                  Certain priority claims that are referred to in Bankruptcy Code sections 507(a)(3),

13 (4), (5), (6) and (7) are required to be placed in classes.  No unsecured priority claims have been

14 asserted and Plan Proponents do not believe that there are any unsecured priority claims against

15 the Estate.

16                                  (2)      **Class 2B General Unsecured Claims**

17                  All Allowed General Unsecured Claims will receive their pro rata share of the

18 remaining funds in the Estate.  Plan Proponents estimate that, after payment of the above-

19 identified claims and net of the Reserve, approximately $350,000 of the Settlement funds will

20 remain, representing an approximate payment of more than 70% for Allowed General Unsecured

21 Claims.  All Allowed General Unsecured Claims will be paid at a time determined by the

22 Liquidating Agent.  Notwithstanding the foregoing, in accordance with the terms of the

23 Settlement, Plan Proponents will not be paid on account of their General Unsecured Claims

24 against the Estate.  Class 2B is impaired under the Plan.

25                          c.      **Class 3 Equity Interests**

26                  Class 3 consists of all Equity Interests in the Debtor arising from the ownership of

DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF LIQUIDATION FOR EXCEL INNOVATIONS,
INC. PROPOSED BY INDIVOS CORPORATION AND SOLIDUS NETWORKS, INC.

Case: 04-53874    Doc# 282    Filed: 03/04/05    Entered: 03/04/05 17:10:16    Page 29 of
49
SF/21606462.4

1    stock in the Debtor. Equity Interests will receive a pro rata share of the remaining assets of the

2    Estate, if any, after payment of all above-referenced Classes of Claims. Class 3 is impaired

3    under the Plan.

4        **B.**      **Post-Confirmation Governance/Liquidating Agent**

5            **1.**      **Appointment of Liquidating Agent**

6            On the Effective Date, David A. Bradlow shall be appointed the Liquidating

7    Agent of the Post-Confirmation Estate. A copy of David A. Bradlow's Resume is attached

8    hereto as **Exhibit E.** The Liquidating Agent shall be the sole authorized representative and

9    signatory of the Post-Confirmation Estate. No other officer, director, or employee of the Debtor

10    shall have any authority, duty, obligation, or responsibility with respect to the Post-Confirmation

11    Estate.

12            **2.**      **Rights and Duties of the Liquidating Agent**

13            The Liquidating Agent shall operate at all times for the benefit of and the

14    undivided interest of the Estate. Without limitation, the Liquidating Agent shall: (i) liquidate for

15    the highest reasonable value, or abandon the Post-Confirmation Estate's assets (to the extent

16    such assets have not been liquidated prior to the Effective Date); (ii) review, reconcile, and, if

17    appropriate, object to, settle or otherwise resolve issues relating to Claims before becoming

18    Allowed Claims, to the extent such acts would be reasonably beneficial to the Post-Confirmation

19    Estate; and (iii) investigate, prosecute, compromise or otherwise resolve any avoidance actions,

20    causes of action, claims, claim objections, counterclaims, rights and interests with all net

21    recoveries derived therefrom to be distributed in accordance with the Plan. In addition, the

22    Liquidating Agent will be responsible for and shall, without limitation, oversee the liquidation

23    and dissolution of the Debtor and the Estate.

24            **3.**      **Disposition of Assets and Claims**

25            Notwithstanding any provision of the Bankruptcy Code and except as otherwise

26    provided in the Plan, the Liquidating Agent, in his absolute discretion, may sell or dispose of any

asset or compromise any Claim against the Estate or defense or cause of action by the Estate without a hearing if the Liquidating Agent determines, in the exercise of reasonable judgment, that such asset or Claim has a value of $50,000 or less, or such Claim has been filed or scheduled in an amount of $50,000 or less.  As to any transaction involving an asset or a Claim that the Liquidating Agent determines, in the exercise of his reasonable judgment, has a value of more than $50,000, the Liquidating shall file a written notice of the contemplated action with the Bankruptcy Court and serve such notice on counsel for the Plan Proponents, the Debtor, counsel for the Debtor, and the United States Trustee and on the persons or entities claiming an interest in the subject matter of the Claim or asset.  If no objection is filed and served upon the Liquidating Agent within twenty (20) days after service of the written notice, the Liquidating Agent may consummate the intended transaction without further notice upon entry of an order by the Bankruptcy Court.  However, if an objection is timely filed, the Liquidating Agent shall set a hearing seeking approval by the Bankruptcy Court of the intended transaction.

### 4. Right of Liquidating Agent to Convert Case

The Liquidating Agent shall be authorized to file a motion to convert the Bankruptcy Case to a case under Chapter 7 of the Bankruptcy Code on behalf of creditors in this Bankruptcy Case in the event that he deems conversion to be in the best interests of the creditors. In the event of conversion of the Bankruptcy Case to Chapter 7, all assets dealt with in the Plan (except for those released by the Debtor in the Settlement) shall revest in the Chapter 7 estate.

### 5. Execution of Documents and Corporate Action

Following the Effective Date, the Liquidating Agent, without being required to obtain any directors' or shareholders' approval or action whatsoever, shall be authorized to execute, deliver, file, or record such contracts, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and provisions of the Plan.

Case No. 04-53874

DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF LIQUIDATION FOR EXCEL INNOVATIONS, INC. PROPOSED BY INDIVOS CORPORATION AND SOLIDUS NETWORKS, INC.

Case: 04-53874    Doc# 282    Filed: 03/04/05    Entered: 03/04/05 17:10:16    Page 31 of 49

SF/21606462.4

**6. Reports**

The Liquidating Agent shall file with the Bankruptcy Court and serve on the Debtor, counsel for the Debtor, counsel for Plan Proponents and the United States Trustee a report within twenty (20) business days after the end of each calendar quarter showing (i) all receipts and disbursements of the Estate during such quarter, (ii) the amount of (A) Cash and (B) the amount of the Reserve (as described below), and (iii) any other matters concerning the Post-Confirmation Estate. Such statement is to be certified by the Liquidating Agent as being true and accurate in all material respects. The Liquidating Agent shall also file and serve on the United States Trustee post-confirmation quarterly reports in the format prescribed by the United States Trustee.

**7. Tax Returns**

The Liquidating Agent shall file all tax returns and other filings with governmental authorities on behalf of the Estate.

**8. Resignation or Removal**

The Liquidating Agent may resign at any time by giving at least thirty (30) days written notice to the Court, counsel for the Plan Proponents, the Debtor, counsel for the Debtor, and the United States Trustee, provided that the Liquidating Agent shall continue to serve until the appointment of a successor is approved by the Bankruptcy Court. In the case of resignation, removal or death of the Liquidating Agent, a successor shall be nominated by Plan Proponents and appointed by the Court.

**9. Engagement of Professionals**

The Liquidating Agent may, with the approval of the Court, retain professionals on behalf of the Post-Confirmation Estate. The reasonable and necessary fees and expenses of such professionals shall be paid in Cash by the Liquidating Agent from the Reserve without further order of the Bankruptcy Court, provided that the Liquidating Agent, counsel for the Plan Proponents, the Debtor, Debtor's counsel, and the United States Trustee shall be provided with

Case: 04-53874    Doc# 282    Filed: 03/04/05    Entered: 03/04/05 17:10:16    Page 32 of 49
SF/21606462.4

1    statements of any fees and expenses ("Fee Statement") incurred and shall have ten (10) days

2    after receiving a Fee Statement, to notify the professional and Liquidating Agent of any

3    objection, in whole or in part, to any of the fees and/or expenses that are not reasonable.  To the

4    extent the objection relates only to part of the Fee Statement, the balance of the amount

5    requested in the Fee Statement shall be paid.  With respect to any portion of the Fee Statement

6    that is subject to a timely-filed objection, the Bankruptcy Court shall retain jurisdiction to

7    determine whether the fees and expenses subject to such objection are reasonable.

8            **10.    Compensation**

9         The Liquidating Agent shall be paid fees at the rate of $375 per hour and will

10    receive reimbursement for reasonable expenses incurred in connection with the Plan or any

11    duties or responsibilities provided for under the Plan.

12         The Liquidating Agent shall be paid in Cash from the Reserve without further

13    order of the Bankruptcy Court, provided that counsel for the Plan Proponents, the Debtor,

14    Debtor's counsel, and the United States Trustee shall be provided with the Liquidating Agent's

15    Fee Statement and shall have ten (10) days after receiving a Fee Statement, to notify the

16    Liquidating Agent of any objection, in whole or in part, to any of his fees and/or expenses that

17    are not reasonable.  To the extent the objection relates only to part of the Fee Statement, the

18    balance of the amount requested in the Fee Statement shall be paid.  With respect to any portion

19    of the Fee Statement that is subject to a timely-filed objection, the Bankruptcy Court shall retain

20    jurisdiction to determine whether the fees and expenses subject to such objection are reasonable.

21            **11.    Limited Liability**

22         The Liquidating Agent shall not be liable for any act he may do or omit to do

23    while acting in good faith and in the exercise of his best judgment, and the fact that such act or

24    omission was advised by an authorized attorney for the Liquidating Agent shall be evidence of

25    such good faith and best judgment; nor shall the Liquidating Agent be liable in any event,

26    except for his own gross negligence or willful misconduct.

Case No. 04-53874

DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF LIQUIDATION FOR EXCEL INNOVATIONS,
INC. PROPOSED BY INDIVOS CORPORATION AND SOLIDUS NETWORKS, INC.

Case: 04-53874    Doc# 282    Filed: 03/04/05    Entered: 03/04/05 17:10:16    Page 33 of
49

SF/21606462.4

1       **12.**     **General Indemnification**

2       The Estate shall indemnify and hold harmless any person or entity who was, or is,

3 a party, or is threatened to be made a party, to any contemplated action, suit or proceeding,

4 whether civil, criminal, administrative or investigative, by reason of the fact that such person or

5 entity is or was the Liquidating Agent or an agent, attorney, accountant or other professional for

6 the Liquidating Agent, against all costs, expenses, judgments, fines and amounts paid in

7 settlement, actually and reasonably incurred by such entity in connection with such action, suit or

8 proceeding or the defense or settlement of any claim, issue or matter therein, to the fullest extent,

9 except to the extent attributable to willful misconduct or gross negligence. Reasonable costs or

10 expenses incurred by any such entity in defending any such action, suit or proceeding may be

11 paid by the Estate in advance of the institution or final disposition of such action, suit or

12 proceeding.

13       **13.**     **Further Authorization**

14       The Liquidating Agent shall be entitled to seek such orders, judgments,

15 injunctions and rulings as he deems necessary to carry out the intentions and purposes, and to

16 give full effect to, the provisions of the Plan.

17     **C.**     **Means of Effectuating the Plan**

18       The Plan shall become effective on the Effective Date. In addition to the

19 provisions set forth elsewhere in the Plan regarding means of execution, the following shall

20 constitute the principal means for implementing the Plan.

21       **1.**     **The Settlement**

22       In consideration for their agreement to pay the Estate $500,000 on the Effective

23 Date to pay Allowed Claims, on the Effective Date, the Debtor on the one hand and Plan

24 Proponents, M. Robert Goldberg, William Ruh, Larry Ginsburg on the other (collectively, the

25 "Parties") mutually release and forever discharge each other, and each of their respective owners,

26 investors, predecessors, successors, heirs, assigns, employees, shareholders, officers, directors,

Case: 04-53874   Doc# 282   Filed: 03/04/05   Entered: 03/04/05 17:10:16   Page 34 of
49
SF/21606462.4

1  agents, attorneys and insurers, whether previously or hereinafter affiliated in any manner

2  (collectively, the "Releasees"), from any and all claims which any of them ever had, now has, or

3  may later claim to have against the other, including without limitation any and all claims which

4  arise out of or are in any way connected with the matters asserted in the Patent Case, the

5  Arbitration, the Adversary and the Santa Clara Case; except that this Settlement Agreement does

6  not and shall not be construed to release or require that Plan Proponents dismiss any claims that

7  Plan Proponents may have against Hoffman, Robin Lowitz, IPS LLC or Aviv or their respective

8  owners, investors, predecessors, successors, heirs, assigns, employees, shareholders, officers,

9  directors, agents, attorneys and insurers, whether previously or hereinafter affiliated in any

10  manner.

11  Under the Settlement, the Debtor forever and irrevocably transfers to Plan

12  Proponents, and disclaims any and all right, title and interest of any kind, direct or indirect, in the

13  1,998,000 shares of Indivos Series A Preferred Stock (the "Stock"), and any and all present or

14  future proceeds from such Stock, issued in the name of Excel.

15  The Settlement also includes an express acknowledgement that Plan Proponents

16  own all the technology at issue in the Patent Case.

17  **2.  The Plan Fund**

18  On the Effective Date, all assets of the Estate shall be vested in the Liquidating

19  Agent.  On or immediately following the Effective Date, the Plan Fund shall be opened by the

20  Liquidating Agent and funded by the proceeds from the Settlement and by a deposit by the

21  Debtor, on or immediately following the Effective Date, of all Cash in which the Debtor has an

22  interest, including any proceeds from all claims of the Debtor against third parties (except for

23  those released by the Debtor in the Settlement) and all other assets of the Debtor or the Estate.

24  **3.  Collection of Plan Proceeds**

25  From and after the Effective Date, the Liquidating Agent shall retain and pursue

26  any of the Estate's Claims (except for those released by the Debtor in the Settlement) as is

Case: 04-53874   Doc# 282   Filed: 03/04/05   Entered: 03/04/05 17:10:16   Page 35 of
49

1    consistent with the interests of creditors, sell or liquidate to Cash the Debtor's remaining tangible

2    and intangible assets, and collect the Debtor's accounts receivable, if any.  All Cash recovered

3    therefrom shall be deposited into the Plan Fund and such funds shall be held in trust by the

4    Liquidating Agent as Plan Proceeds.  Except as otherwise provided in the Plan and the

5    Confirmation Order, such Plan Proceeds shall be free and clear of all claims and liens and shall

6    only be expended in accordance with the Plan.

7            **2.      Reserve**

8            On the Effective Date, the Liquidating Agent shall create a reserve sufficient to

9    pay the anticipated post-confirmation expenses, which shall not exceed the amount of $75,000

10   (the "Reserve").  The Reserve may be used by the Liquidating Agent for the estimated post-

11   confirmation costs of operation, including but not limited to litigation-related expenses.  The

12   Reserve may also be used to pay for other non-litigation related expenses, including but not

13   limited to the cost to file tax returns, quarterly U.S. Trustee Fees, professional fees, and as a

14   reserve to fund other post-confirmation expenses of the liquidation.  The Reserve may be funded

15   from the proceeds of the Settlement and/or other assets and may be replenished from time to time

16   in the Liquidating Agent's discretion.

17           **3.      Distributions**

18           Upon or after the Effective Date, the Liquidating Agent shall make all required

19   distributions from the Plan Fund in accordance with the Plan and in accordance with the

20   priorities set forth in the United States Bankruptcy Code.  The Liquidating Agent may make

21   interim distributions to priority and unsecured creditors at such times as the Liquidating Agent

22   determines sufficient funds exist and to the extent that the Reserve is fully funded.

23           **4.      Treatment of Unclaimed Property**

24           If a Distribution to a holder of an Allowed Claim becomes Unclaimed Property,

25   the Liquidating Agent will make a reasonable effort to reach the holder of the Allowed Claim,

26   after which the holder of the Allowed Claim shall cease to be entitled to the Distribution or any

Case: 04-53874    Doc# 282    Filed: 03/04/05    Entered: 03/04/05 17:10:16    Page 36 of
49

1  further Distributions.  If any Distribution to any holder of an Allowed Claim is returned to the

2  Liquidating Agent as undeliverable, no further Distributions shall be made to such holder unless

3  and until the Liquidating Agent is notified, in writing, of such holder's then-current address.

4  Undeliverable Distributions shall be deposited in the Reserve until such time as a Distribution

5  becomes deliverable.  No person or entity ultimately receiving initially undeliverable Cash shall

6  be entitled to any interest or other accruals after the date the initially undeliverable Cash is

7  returned to the Liquidating Agent as undeliverable.  Any unclaimed Distributions as of the Final

8  Distribution Date (as defined below) shall be distributed pro rata to the holders of Allowed

9  Claims as provided for in the Plan.

10        **5.**      **Time Bar to Cash Payments**

11        Checks issued by the Liquidating Agent for Allowed Claims shall be null and

12  void if not negotiated within one hundred and twenty (120) days from and after the date of

13  issuance.  Requests for re-issuance of any check shall be made directly to the Liquidating Agent

14  by the holder of the Allowed Claim.  Any such request shall be made on or before ten (10) days

15  before the first anniversary of the Effective Date.  After such date, all such Claims shall be

16  discharged and forever barred and the monies shall be distributed as an undeliverable

17  Distribution pursuant to Article V of the Plan.

18        **6.**      **De Minimis Distributions and Rounding of**
                     **Distributions**

19

20        The Liquidating Agent shall not make a Distribution to the holder of an Allowed

21  Claim if the amount of the Distribution is less than $25.  All Cash not so distributed shall remain

22  in the Plan Fund.  The Liquidating Agent may round down all Distributions to the nearest whole

23  dollar amount.

24        **7.**      **Final Distribution Date**

      The final distribution date ("Final Distribution Date") shall be the first business

25  day after the date on which (i) all non-Cash assets of the Estate have been liquidated or

26

1  abandoned; (ii) all Disputed Claims (including Non-Classified Claims) have been resolved by

2  Final Order or disallowed; (iii) all post-Effective Date Claims have been paid in full; and (iv) the

3  Bankruptcy Case has been fully administered.

4  **D.     Revesting of Title**

5  Notwithstanding section 1141(b) of the Bankruptcy Code, Confirmation shall not

6  revest the property of the Estate in the Debtor.  Subject to the provisions of the Plan and the

7  Confirmation Order, the Estate shall remain in existence after the Effective Date until the entry

8  of a final decree.  Except as otherwise provided by the Plan or the Confirmation Order, upon the

9  Effective Date, title to the assets of the Estate shall be free and clear of all claims and interests, in

10  accordance with section 1141 of the Bankruptcy Code, except for the valid liens on the assets by

11  holders of Allowed Claims that are secured (including Claims which become Allowed Claims

12  after the Effective Date).

13  **E.     Retention and Enforcement of Claims**

14  **1.     Retention of Claims**

15  The Plan expressly reserves all Claims, objections to Claims, rights, defenses,

16  powers, interests and Causes of Action (as defined below) of the Debtor and the Estate against

17  all parties (except for those released by the Debtor in the Settlement), whether or not asserted as

18  of the Effective Date.  Pursuant to section 1123(b)(3) of the Bankruptcy Code, the Liquidating

19  Agent will succeed to any and all claims held by the Debtor or the Estate (except for those

20  released by the Debtor in the Settlement).  After the Effective Date, the Liquidating Agent shall

21  have the right to assert, on behalf of the Estate, all rights, causes of action, powers, privileges,

22  licenses, and franchises of the Debtor or the Estate (except for those released by the Debtor in the

23  Settlement), and all causes of action arising under the Plan and the Bankruptcy Code, including

24  avoiding powers, objections to the allowance of Claims and defenses to Disputed Claims arising

25  under applicable non-bankruptcy law or under sections 502(d), 544, 545, 547, 548, 549, 550, 553

26  and 558 of the Bankruptcy Code and to seek all other recoveries of property, damages and

Case: 04-53874   Doc# 282   Filed: 03/04/05   Entered: 03/04/05 17:10:16   Page 38 of
49
SF/21606462.4

1    equitable relief (collectively, the "Causes of Action").

2            **2.**      **Claim Objections**

3          After the Effective Date, the Liquidating Agent shall have the right to object to

4   the allowance of Claims filed with the Bankruptcy Court with respect to which liability or

5   allowance in whole or in part is disputed.

6          Unless otherwise ordered by the Bankruptcy Court, the Liquidating Agent shall

7   file and serve all objections to Claims as soon as practicable, but in no event later than 90 days

8   after the Notice of the Effective Date or such later date as may be provided in the Confirmation

9   Order or pursuant to an order of the Bankruptcy Court; provided, however, that the foregoing

10   objection deadline shall not prohibit or bar the Liquidating Agent from objecting to late-filed

11   Claims or amendments to Claims, raising new objections to Disputed Claims based upon newly

12   discovered facts, or seeking reconsideration of any Claim that has been allowed.  The hearing on

13   any objection shall be scheduled as soon as is reasonably practicable, subject to the Bankruptcy

14   Court's calendar.  All objections shall be litigated to Final Order or compromised and settled or

15   otherwise resolved, subject to approval by the Bankruptcy Court.

16            **3.**      **Reserve Provision for Disputed Claims**

17          The Liquidating Agent shall implement the following procedures with respect to

18   allocation and distribution of Cash in the Plan Fund to the holders of Disputed Claims that

19   become Allowed Claims:

20               a.      Cash respecting Disputed Claims shall not be distributed but, if

21   necessary, shall be held by the Liquidating Trustee in the Plan Fund in an amount equal to such

22   Distributions as would otherwise be made to the holders of such Claims based on the Disputed

23   Claims Amount.

24               b.      When a Disputed Claim becomes an Allowed Claim, there shall be

25   distributed to the holder of such Allowed Claim, in accordance with the provisions of the Plan,

26

DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF LIQUIDATION FOR EXCEL INNOVATIONS,
INC. PROPOSED BY INDIVOS CORPORATION AND SOLIDUS NETWORKS, INC.

SF/21606462.4

Cash equal to a pro rata share of the Cash paid to holders of Allowed Claims in the same Class as of the time such Distribution is made.

c.      To the extent a Disputed Claim becomes an Allowed Claim in an amount less than the portion of the Disputed Claim Amount reserved for such Disputed Claim, then the resulting surplus Cash shall be retained in the Plan Fund and distributed as provided by the Plan.

**4.      Debtor's Officers, Directors, Employees, Agents and Professionals**

After the Effective Date, the Liquidating Agent shall have the right to assert on behalf of the Estate any Causes of Action against the Debtor's present and former officers, directors, employees, agents and professionals engaged by the Debtor arising at any time, including without limitation claims against Hoffman and others for diversion of Estate assets. The Liquidating Agent shall file and serve all such objections and assertions of Causes of Actions, if any, by no later than 180 days after the Effective Date, or such later date as may be provided in the Confirmation Order or pursuant to an order of the Bankruptcy Court.

**F.      Treatment of Executory Contracts and Unexpired Leases**

All unexpired leases and executory contracts in which the Estate holds an interest are rejected pursuant to the Plan. Any unexpired leases and/or executory contracts not explicitly assumed in the Plan or by order of the Bankruptcy Court prior to the Effective Date are rejected as of the Effective Date pursuant to section 365 of the Bankruptcy Code.

Creditors seeking any type of damages or claims by reason of the rejection of an executory contract or unexpired lease must file and serve a claim by the Administrative Claims Bar Date as defined in Article III.D of the Plan. Claims must be served on counsel for the Plan Proponents, the Debtor, counsel for the Debtor, the Liquidating Agent, and the U.S. Trustee. Objections to claims must be filed and served on counsel for the Plan Proponents, the Debtor, counsel for the Debtor, the Liquidating Agent, and the U.S. Trustee, and the requesting party.

1    Holders of unsecured Claims arising from the rejection of an unexpired lease or executory

2    contract that fail to file and serve a proof of claim on or before Administrative Claims Bar Date

3    shall be forever barred from asserting such claims against the Liquidating Agent and the Post-

4    Confirmation Estate or its property.

5        **G.**      **Retention of Jurisdiction**

6        Notwithstanding Confirmation of the Plan or the Effective Date having occurred,

7    the Bankruptcy Court shall retain full jurisdiction as provided in 28 U.S.C. § 1334 to enforce the

8    provisions, purposes, and intent of the Plan for all purposes including, without limitation:

9        1.      Determination of the allowability and classification of Claims upon

10    objection to such Claims;

11        2.      Determination necessary or appropriate under section 505 of the

12    Bankruptcy Code or other determination relating to tax returns filed or to be filed by the Debtor

13    or the Liquidating Agent;

14        3.      Determination of the right, power, action or duty of the Liquidating Agent

15    under the Plan;

16        4.      Determination of requests for payment of Claims entitled to priority under

17    section 507(a)(1) of the Bankruptcy Code;

18        5.      Resolution of controversies and disputes regarding interpretation of the

19    Plan or the Confirmation Order or any other order of the Bankruptcy Court;

20        6.      Implementation of the provisions of the Plan and entry of orders in aid of

21    Confirmation;

22        7.      Modification of the Plan pursuant to section 1127 of the Bankruptcy Code;

23        8.      Adjudication of any causes of action, including avoiding powers actions;

24        9.      To hear and determine any and all applications by professionals for an

25    award of professional fees;

26        10.      Entry of a final decree and order closing the Bankruptcy Case.

DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF LIQUIDATION FOR EXCEL INNOVATIONS,
INC. PROPOSED BY INDIVOS CORPORATION AND SOLIDUS NETWORKS, INC.

Case: 04-53874   Doc# 282   Filed: 03/04/05   Entered: 03/04/05 17:10:16   Page 41 of
49

SF/21606462.4

1    IV.    **CONFIRMATION AND EFFECTIVENESS OF THE PLAN**

2              Because the law with respect to confirmation of a plan of reorganization is

3    complex, creditors concerned with issues regarding confirmation of the Plan should consult with

4    their own attorneys.  The following discussion is intended solely to provide basic information

5    concerning certain confirmation issues.  Plan Proponents cannot and do not represent that the

6    discussion contained below is a complete summary of the law on this topic.

7              Many requirements must be met before the Bankruptcy Court may confirm the

8    Plan.  Some of the requirements discussed in this Disclosure Statement include acceptance of the

9    Plan by the requisite number of holders of Claims and Equity Interests, and whether the Plan

10   pays such holders at least as much as they would receive in a liquidation of the Debtor under

11   chapter 7 of the Bankruptcy Court.  These requirements, however, are not the only requirements

12   for confirmation, and the Bankruptcy Code will not confirm the Plan unless and until it

13   determines that the Plan satisfies <u>all</u> applicable requirements, including requirements not

14   referenced in this Disclosure Statement.  Plan Proponents believe they have complied or will

15   comply with each of these requirements.

16        A.    **Voting and Right To Be Heard at Confirmation**

17              1.    **Who May Support Or Object To Confirmation Of The Plan?**

18              Any party in interest may support or object to the confirmation of the Plan.  Even

19   entities that may not have a right to vote (<u>e.g.</u>, entities whose Claims are classified into an

20   unimpaired Class) may still have a right to support or object to confirmation of the Plan.  (*See*

21   Section I.E.3 for information regarding the applicable deadlines for objecting to confirmation of

22   the Plan).

23              2.    **Who May Vote To Accept Or Reject The Plan?**

24              A holder of a Claim generally has a right to vote for or against the Plan if its

25   Claim or Equity Interest is both "allowed" for purposes of voting and classified into an impaired

26

Case No. 04-53874

Case: 04-53874    Doc# 282    Filed: 03/04/05    Entered: 03/04/05 17:10:16    Page 42 of
49

SF/21606462.4

Class.

### a. What Is An Allowed Claim Or Equity Interest For Voting Purposes?

As noted above, a Claim or Equity Interest must be "allowed" for purposes of voting in order for such claim or equity interest to have the right to vote on the Plan. Generally, for voting purposes, a Claim is deemed "allowed" if (i) a proof of Claim or Equity Interest was timely filed, or (ii) if no proof of Claim or Equity Interest was filed, the holder of the Claim or Equity Interest is identified in the Schedules as other than "disputed," "contingent," or "unliquidated."

### b. What Is An Impaired Claim Or Equity Interest?

As noted above, the holder of a Claim or Equity Interest has the right to vote on the Plan if that Claim or Equity Interest is allowed and classified into a Class that is *impaired* under the Plan. A Class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that Class with respect to their claims or equity interests. **Plan Proponents believe that Classes 1B, 2B and 3 are impaired under the Plan.** Any party that disputes such characterization, however, may request that the Bankruptcy Court find that its Claim or Equity Interest is impaired in order to obtain the right to vote on the Plan.

### 3. Who Is Not Entitled To Vote?

The holders of the following five types of Claims or Equity Interests are not entitled to vote on the Plan: (a) Claims or Equity Interests that have been disallowed; (b) Claims in unimpaired Classes (*i.e.*, **Class 1A**); (c) Claims in impaired Classes that do not receive or retain any interest, property, or other consideration under the Plan; (d) Claims entitled to priority pursuant to sections 507(a)(1), (a)(2), and (a)(7) of the Bankruptcy Code. Holders of Claims and Equity Interests in unimpaired Classes are not entitled to vote because such Classes are deemed to have accepted the Plan. Holders of Claims entitled to priority pursuant to sections 507(a)(1), (a)(2), and (a)(7) of the Bankruptcy Code are not entitled to vote because such Claims are not

Case: 04-53874    Doc# 282    Filed: 03/04/05    Entered: 03/04/05 17:10:16    Page 43 of
49
SF/21606462.4

1    placed in Classes and they are required to receive certain treatment specified by the Bankruptcy

2    Code. Holders of Claims or Equity Interests of the type described above, however, nevertheless

3    may have the right to support or object to the Confirmation of the Plan.

4    **4.      Votes Necessary To Confirm The Plan**

5    The Bankruptcy Court cannot confirm the Plan unless, among other things, (a) at

6    least one impaired Class has accepted the Plan without counting the votes of any insiders within

7    that Class; and (b) either all impaired Classes have voted to accept the Plan, or the Plan is

8    eligible to be confirmed by "cramdown" with respect to any dissenting impaired Class, as

9    discussed in Section IV.A.6 and IV.A.7 herein.

10   **5.      Votes Necessary For A Class To Accept The Plan**

11   A Class of Claims is considered to have accepted the Plan when more than one-

12   half in number and at least two-thirds in dollar amount of the Claims that actually voted in that

13   Class have voted in favor of the Plan.

14   **6.      Treatment Of Nonaccepting Classes**

15   As noted above, even if certain impaired Classes do not accept the proposed Plan,

16   the Bankruptcy Court may nonetheless confirm the Plan if the nonaccepting Classes are treated

17   in the manner required by the Bankruptcy Code. The process by which nonaccepting Classes are

18   forced to be bound by the terms of a plan is commonly referred to as a "cramdown."

19   Specifically, the Bankruptcy Code allows the Plan to be "crammed down" on nonaccepting

20   Classes of Claims or Equity Interests if the Plan meets the requirements of section 1129(a)(1)

21   through (a)(7) and 1129(a)(9) through (a)(13) of the Bankruptcy Code and if the Plan does not

22   "discriminate unfairly" and is "fair and equitable" as those terms are defined in section 1129(b)

23   of the Bankruptcy Code.

24   In general, a plan does not discriminate unfairly if it provides a treatment to the

25   class that is substantially equivalent to the treatment that is provided to other classes that have

26   equal rank. In determining whether a plan discriminates unfairly, courts will take into account a

DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF LIQUIDATION FOR EXCEL INNOVATIONS,
INC. PROPOSED BY INDIVOS CORPORATION AND SOLIDUS NETWORKS, INC.

Case: 04-53874   Doc# 282   Filed: 03/04/05   Entered: 03/04/05 17:10:16   Page 44 of
49

SF/21606462.4

1  number of factors, including the effect of applicable subordination agreements between parties.

2  Accordingly, two classes of unsecured creditors could be treated differently without unfairly

3  discriminating against either class.

4      **7.      Request For Confirmation Despite Nonacceptance By
                One or More Impaired Classes**

5          Plan Proponents have requested that the Bankruptcy Court confirm the Plan by

6  cramdown on any impaired Class that does not vote to accept the Plan, and Plan Proponents

7  believe that cramdown is appropriate under the circumstances.

8      **B.      Good Faith and Compliance with Law**

9          The Bankruptcy Code requires that a plan of reorganization be proposed in good

10  faith and disclose certain relevant information regarding payments due and the nature of

11  compensation to insiders.  Plan Proponents believe they have satisfied these requirements and

12  will seek a ruling to that effect from the Bankruptcy Court in connection with Confirmation of

13  the Plan.

14     **C.      Liquidation Analysis**

15         Section 1129(a)(7) of the Bankruptcy Code requires that, with respect to each

16  impaired Class (Classes 1B, 2B, and 3), each member of such Class either (a) has accepted the

17  Plan, or (b) will receive or retain under the Plan on account of its Claim or Equity Interest

18  property of a value, as of the Effective Date, that is at least equal to the amount that such

19  member of the Class would receive or retain if the Debtor were liquidated under Chapter 7 of the

20  Bankruptcy Code.  This requirement is commonly referred to as the "Best Interests Test."  Plan

21  Proponents believe that the Plan meets this test and will seek appropriate findings from the

22  Bankruptcy Court in connection with Confirmation of the Plan.

23         The Plan provides for the liquidation of the Debtor in a manner that is at least as

24  efficient, if not more efficient, as would occur in the event that the Bankruptcy Case was

25  converted to a case under Chapter 7 of the Bankruptcy Code.  Under the Plan, the Liquidating

26

Case: 04-53874   Doc# 282   Filed: 03/04/05   Entered: 03/04/05 17:10:16   Page 45 of
                                      49
SF/21606462.4

1    Agent will function much as a Trustee would in a Chapter 7 case.  The same assets that would be

2    liquidated under Chapter 7 are the same assets being sold under the Plan.  However, the net

3    proceeds from the collection and sale of property of the Estate available for distribution to

4    Creditors would be reduced by additional administrative expenses:  the commission payable to

5    the Chapter 7 Trustee and the Trustee's retained professionals.

6          In a Chapter 7 case, the Trustee would be entitled to seek a sliding scale

7    commission based upon the funds distributed to Creditors.  Pursuant to Bankruptcy Code section

8    326, a Chapter 7 Trustee would be entitled to seek compensation based on his/her distribution of

9    funds.  Although, under Bankruptcy Code section 326, the Trustee's compensation is capped by

10   this sliding scale, and the Trustee should be required to demonstrate the reasonableness of his or

11   her commissions in relation to work actually performed or results obtained, Plan Proponents

12   cannot predict whether a Trustee would seek or obtain a straight commission based solely on

13   distributions or some lesser amount.  In addition, a Chapter 7 Trustee would employ legal

14   counsel and possibly accountants and other professionals that would add additional

15   Administrative Expenses that would be paid ahead of the above-identified impaired Classes.  By

16   contrast, the Liquidating Agent may not need to employ any additional professionals.

17         Plan Proponents estimate that the Liquidating Agent will have in excess of

18   $500,000 in Cash to be distributed pursuant to the Plan as a result of the proceeds Plan

19   Proponents will pay to the Estate under the Settlement.  In the event that the Plan is not

20   Confirmed, there will be no settlement and there will be no proceeds of the Settlement to satisfy

21   Allowed Claims.  It is speculative whether a Chapter 7 Trustee liquidating the Debtor's assets

22   would generate proceeds on an order of magnitude equal to or greater than the proceeds Plan

23   Proponents will pay under the Settlement.

24         It is also anticipated that a Chapter 7 liquidation would result in significant delay

25   in payment to Creditors.  Among other things, a Chapter 7 case would trigger a new bar date for

26   filing Claims that will be 90 days after the first date set for the section 341(a) meeting of the

Case: 04-53874    Doc# 282    Filed: 03/04/05    Entered: 03/04/05 17:10:16    Page 46 of
49

1 creditors in the converted Chapter 7 case.  *See* Fed. R. Bankr. P. 1119, 3002.  Hence, a Chapter 7

2 liquidation would not only delay distribution, but would also raise the prospect of additional

3 Claims being asserted that may minimize the payout to creditors.

4 **D.  Feasibility**

5 Because the Plan contemplates a liquidation of the assets of the Debtor, Plan

6 Proponents submits that the feasibility requirement set forth in section 1129(a)(11) of the

7 Bankruptcy Code is not applicable to the Plan.

8 **E.  Conditions To Confirmation Of The Plan**

9 Confirmation of the Plan is conditioned upon, and shall be of no force and effect,

10 until the Bankruptcy Court has entered the Confirmation Order, which shall be in form and

11 substance satisfactory to Plan Proponents and consistent with the Plan, and such order is a Final

12 Order.

13 **F.  Conditions To The Occurrence Of The Effective Date Of The
Plan**

14

15 Subject to Article XI.A of the Plan, the Plan shall become effective and the

16 Effective Date shall be the first business day occurring 20 days after Confirmation of the Plan, or

17 such other date as the Bankruptcy Court shall order.

18 **G.  Binding Effect of Confirmation**

19 Confirmation will bind the Debtor, all holders of Claims and Equity Interests and

20 other parties in interest to the provisions of the Plan whether or not the Claim or Equity Interest

21 of such holder is impaired under the Plan and whether or not the holder of such Claim or Equity

22 Interest has accepted the Plan.

23 **H.  Channeling of Claims and Injunction**

24 Because the Plan provides for the liquidation of all or substantially all of the

25 property of the Estate, Confirmation of the Plan will not discharge the Debtor from Claims that

26 arose prior to Confirmation.  The Plan, however, provides that the treatment of all Claims and

Case: 04-53874   Doc# 282   Filed: 03/04/05   Entered: 03/04/05 17:10:16   Page 47 of
49
SF/21606462.4

1    Equity Interests thereunder shall be the sole and exclusive remedy on account of such Claims

2    and Equity Interests with respect the Estate, including any interest accrued from and after the

3    Petition Date or interest that would have accrued but for the commencement of the Bankruptcy

4    Case.

5           As a consequence, except as otherwise provided in the Plan, on or after the

6    Effective Date, all persons who have held, currently hold or may hold a Claim or Equity Interest

7    treated or provided for pursuant to the Plan will be permanently enjoined from taking any of the

8    following actions on account of any such Claim or Equity Interest: (i) commencing or

9    continuing, in any manner and any place, any action or other proceeding against the Estate

10    without leave of the Bankruptcy Court; (ii) enforcing, attaching, collecting or recovering in any

11    manner any judgment award, decree, or order against any property without leave of the

12    Bankruptcy Court; (iii) creating, perfecting or enforcing any lien against property of the Estate

13    without leave of the Bankruptcy Court; (iv) taking any action to obtain possession of property of

14    the Estate or to obtain possession of property from the Estate; and (v) commencing or continuing

15    any action or proceeding, in any manner and in any place, that does not comply with or is

16    inconsistent with the provisions of the Plan. Any claim or cause of action asserted against the

17    Estate, the Debtor, professionals or Plan Proponents arising out of or related to the conduct of

18    their duties in the Bankruptcy Case, whether before or after the Effective Date, shall be

19    commenced only in the Bankruptcy Court. Except as provided for in the Plan, all property dealt

20    with in the Plan (including property of the Estate) is free and clear of all Claims and Equity

21    Interests. Any person or entity injured by any willful violation of such injunction will be entitled

22    to recover actual damages, including costs and professional fees, and, where appropriate,

23    punitive damages from the willful violator.

24    **I.**      **Plan Controls**

25           In the event there are inconsistencies between this Disclosure Statement and the

26    Plan, the terms of the Plan shall control.

SF/21606462.4

1    **V.    CERTAIN FEDERAL INCOME TAX CONSEQUENCES**

2            Implementation of the Plan may have federal, state, and local tax consequences to

3    the Debtor and its estate as well as to the creditors and shareholders of the Debtor.  No tax

4    opinion has been sought or will be obtained with respect to any tax consequences of the Plan,

5    and this disclosure does not constitute and is not intended to constitute either a tax opinion or tax

6    advice to any person.

7            Creditors, shareholders and other persons therefore are advised to consult with

8    their own tax advisors or accountants regarding the tax consequences to them and to the Debtor

9    of the transactions contemplated by the Plan, including federal, state, local, and foreign tax

10   consequences.

11   **VI.    RECOMMENDATION AND CONCLUSION**

12           Plan Proponents believes that confirmation and implementation of the Plan are

13   preferable to all other available and feasible alternatives because that would result in a prompt

14   and favorable liquidation of assets and an early distribution to holders of Claims.  Plan

15   Proponents thus urge holders of impaired Claims and Equity Interests to vote to accept the Plan

16   by so indicating on their ballots and returning them as specified in this Disclosure Statement and

17   on their ballots.

18   DATED:  March 4, 2005                        BINGHAM McCUTCHEN LLP

19

20                                                By: /s/ Randy Michelson
                                                    _____
21                                                        Randy Michelson
                                                     Attorneys for Creditors and Plan Proponents
22                                                   Indivos Corporation and Solidus Networks, Inc.

23

24

25

26

DISCLOSURE STATEMENT IN SUPPORT OF PLAN OF LIQUIDATION FOR EXCEL INNOVATIONS,
INC. PROPOSED BY INDIVOS CORPORATION AND SOLIDUS NETWORKS, INC.

Case: 04-53874    Doc# 282    Filed: 03/04/05    Entered: 03/04/05 17:10:16    Page 49 of
49
SF/21606462.4