CAMPEAU GOODSELL SMITH
A Law Corporation
SCOTT L. GOODSELL, SBN 122223
GREGORY J. CHARLES, SBN
440 N. 1st Street, Suite 100
San Jose, California 95112
(408) 295-9555

Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re:                                      ) Case No. 04-53874-ASW
                                            )
    EXCEL INNOVATION, INC.,             ) CHAPTER 11
                                            )
                                            ) Date:  December 7, 2010
                Debtor.        ) Time:  1:15 p.m.
                                            ) Judge: Hon. Arthur S. Weissbrodt
                                                     280 S. First Street, Room 3020
                                                     San Jose, California

**FIRST INTERIM APPLICATION FOR COMPENSATION AND**
**REIMBURSEMENT OF EXPENSES BY ATTORNEY FOR DEBTOR**

## TABLE OF CONTENTS

Case Administration 3

Stock Proceeds Turnover 5

District Court Patent Litigation 7

Reorganization Plan(s) 10

SLAPP Litigation 11

AAA Arbitration 11

Claims Analysis 14

Fee Application 15

Conclusion 15

CERTIFICATION BY ATTORNEY FOR DEBTOR 18

The Application of Campeau Goodsell Smith (Applicant) respectfully represents:

Applicant is a professional corporation, each of whose attorneys is duly licensed and admitted to practice before the above-entitled court, and serve as attorneys for the debtor herein, having been so retained upon order of this court dated March 24, 2005. As such attorneys, Applicant has performed various legal services, particulars of which are hereinafter set forth:

## CASE ADMINISTRATION

For some years prior to the initiation of this Chapter 11 case, Excel Innovations, Inc., had been in various and multiple forms of litigation with Solidus Networks Inc., and its predecessor entity Indivos Corporation, resulting from a sale/transfer transaction involving certain patents and the resultant claims by each entity against the other(s). In some instances, Excel had prevailed and in other instances, Solidus/Indivos had prevailed. However, by early 2004, two primary actions persisted: the District Court Patent Litigation (described below) and the AAA Arbitration (also described below).

In/about June 2004, Debtor filed a Chapter 11 petition in response to adverse rulings in the District Court Patent Litigation and in the AAA Arbitration. Counsel Lanahan & Reilly (LR) originally filed the Chapter 11 petition but was disqualified in/about October 2004, and Debtor engaged the law offices of Charles Logan (Logan) insteaed. In early 2005, Logan and Debtor agreed to part ways. In March 2005, Debtor engaged Applicant to replace Logan as its counsel.

Communications. From the outset of its engagement, Applicant has routinely conferred with Debtor concerning its obligations pursuant to the Bankruptcy Rules and U.S. Trustee Guidelines, and has assisted Debtor in preparing required reports. Applicant has communicated on various subjects with representatives of the U.S. Trustee's office and the Bankruptcy Clerk's office with respect to issues arising in this case. Applicant has regularly conferred with the several counsel taking part in this case representing individual creditors.

Debtor Relief from Stay. At the time when Debtor engaged Applicant, Logan had filed a motion for relief from stay to permit Debtor to pursue an issue-related appeal in the District Court Patent Litigation. Logan and Applicant appeared jointly on behalf of Debtor at the hearing on the motion. The motion was granted by the Court, but significant additional briefing ensued regarding the scope of the relief being granted. Special Counsel Knobbe Martin was engaged for the limited purpose of pursuing the single-issue appeal from the District Court.

Engagement of Professionals. During the course of this case, Applicant has sought permission to engage two separate special counsel (KMOB and SVLG) and a tax professional.

Identification of Assets. Shortly after Applicant became involved in this case, Debtor requested that Applicant depose the responsible parties at escrow-holder U.S. Bank regarding the status and sum of amounts being held on account due to Debtor. Applicant filed an application for a Rule 2004 examination, which was opposed by Indivos/Solidus. Various briefing ensued. Eventually, Indivos/Solidus counsel agreed to represent on the record before this Court that a certain sum existed on the petition date, and that certain additional sums had been paid into the escrow account – and that no monies had been removed – which obviated the need for the Rule 2004 examination.

Corporate Governance. At Debtor's request, Applicant attended certain corporate meetings to report on Chapter 11 case and litigation issues. In mid-2007, Debtor's shareholders replaced existing management with a new management group; old management disputed the election results but not the ballots cast. Applicant consulted outside counsel for instructions on which management group controlled Debtor after the shareholder election, and confirmed that the new management group had validly been elected. Subsequently, Applicant was called upon by the new management group to force the old group to disgorge the corporate records and funds.

Motion to Convert Case. As a result of the uncooperative management change and the lack of corporate financial records, the new management was unable to file monthly operating reports for a period of months. In mid-2008, the U.S. Trustee filed a motion to convert the case for failure to file the required operating reports. Applicant opposed the motion on Debtor's behalf, assisted Debtor in preparing the necessary operating reports, and the motion was denied. In early 2010, another motion to covert the case was brought, which was joined by YOU Technology in an effort to avoid Debtor's continuing claims to the Indivos stock proceeds, and that motion was also denied.

In connection with the foregoing, over the past 5½ years, Applicant has expended time at a cost to the estate of $149,217.00.

## STOCK PROCEEDS TURNOVER

In May 1995, Excel and Ned Hoffman formed the predecessor to Indivos Corporation. Excel capitalized Indivos and received 1,998,000 shares of Indivos Series A stock. In June 2000, Hoffman entered into several agreements with Indivos, including a pledge of Excel's Indivos stock shares to secure Hoffman's obligations under a settlement agreement. Hoffman also placed his shares and Excel's shares in a voting trust agreement for a three year period. During the first two years of the voting trust, Indivos did not assert any default by Hoffman, but in the third year, Hoffman filed more than a dozen lawsuits in his own name and Excel's name seeking to block a merger between Indivos and Solidus.

In July 2003, Indivos and Solidus completed their merger. Pursuant to the merger, Indivos ceased to exist and its former shareholders received cash consideration for their shares. Solidus deposited the merger proceeds (in three tranches) attributable to Excel's shares into an escrow, which totalled $1,178,945.90 as of December 2004. Indivos/Solidus asserted setoff and a security interest in these funds.

Shortly after filing the Chapter 11 case, prior counsel LR filed an adversary proceeding seeking turnover of the escrowed funds held by escrow-holder U.S. Bank (the Stock Proceeds Turnover Litigation). When Logan replaced LR as Chapter 11 counsel, he specifically declined to prosecute the Stock Proceeds Turnover Litigation.

After Applicant was engaged, Applicant discussed the turnover litigation with Debtor's then-management and investigated the basis for Debtor's claims and Indivos/Solidus asserted rights against the escrowed funds. Applicant thereafter persuaded Silicon Valley Law Group (SVLG) to act as special counsel to prosecute the Stock Proceeds Turnover Litigation. From March 2005 until March 2007, SVLG attorney Gregory Charles undertook discovery and prosecuted Debtor's claim to the escrowed funds; when attorney Charles joined Applicant in March 2007, Applicant substituted itself for SVLG as record counsel in the turnover litigation.

In September 2008, Applicant researched and filed a motion for summary judgment. The hearing on the motion was continued on several occasions while the Court awaited a promised motion to intervene by other former Indivos shareholders purportedly claiming an interest in the escrowed funds. Eventually, in March 2009, opposing counsel represented that the true intervenor would be YOU Technology, credit bid purchaser of Indivos/Solidus assets. Applicant conducted further investigation into YOU's purported assigned rights, and undertook legal research to respond to same, before renewing Debtor's summary judgment motion in April 2009; the Court declined Applicant's motion for summary judgment in June 2009. Based on the Court's reasoning, Applicant turned its attention to concluding the District Court Patent Litigation before resuming efforts to resolve the Stock Proceeds Turnover Litigation.

In mid-2010, at the suggestion of this Court, Applicant scheduled a mediation session with Bankruptcy Judge Dennis Montali, which resulted in a settlement whereby Debtor will

receive approximately $925,000.00 (with accruing interest). Applicant prepared and filed its motion to approve this compromise, which is set for hearing.

In connection with the foregoing, over the past 5½ years, Applicant has expended time at a cost to the estate of $179,260.00.

## DISTRICT COURT PATENT LITIGATION

In July 2003, Excel filed a complaint in the U. S. District Court for the Northern District of California against Indivos/Solidus alleging breach of a patent licensing agreement and infringement on 15 patents in the field of tokenless biometric computer systems (the District Court Patent Litigation). Indivos/Solidus asserted numerous counterclaims against Excel, Hoffman and Aviv LLC, including claims for declaratory relief with respect the ownership of the subject patents, patent infringement and inducing infringement of the same 15 subject patents, intentional interference with prospective economic advantage, violation of the Lanham Act, business disparagement, and conspiracy to commit the other alleged violations. In response, Excel asserted new counterclaims against Indivos/Solidus for declaratory relief with respect to patent ownership, breach of contract (failure of consideration), breach of contract (frustration of purpose), breach of contract (breach of fiduciary duty) and fraud. Excel and Indivos/Solidus both moved for partial summary judgment as to ownership of the patents.

In May 2004, the District Court granted Indivos/Solidus' motion for partial summary judgment finding these parties to be the owners of the patents. The remaining Indivos/Solidus claims, including claims for infringement and damages, remained to be resolved by the District Court at the time that Debtor filed its bankruptcy petition staying the patent litigation.

In October 2004, Indivos/Solidus sought relief from stay to allow completion of the District Court Patent Litigation and the AAA Arbitration. The Court conducted hearings in January 2005 and February 2005, and indicated that it was inclined to grant relief from stay only

to permit Debtor to seek Rule 54 certification from the District Court with respect to the summary judgment order on patent ownership, whereupon Indivos/Solidus withdrew its motion. In response, Debtor filed its own motion for relief from stay for that purpose, and the Court entered its order granting relief in June 2005.

Concurrently with Applicant's engagement, Debtor engaged special counsel KMOB to prosecute the Rule 54 certification and expected related appeal. KMOB researched and filed its motion before the District Court for Rule 54 certification; Indivos/Solidus opposed that motion, raising various bankruptcy-related issues concerning this Chapter 11 case and the then-pending Aviv Chapter 7 proceeding. KMOB called upon Applicant to respond to the bankruptcy issues. The District Court declined the Rule 54 certification, citing unresolved matters in the pending bankruptcy cases (including a pending Indivos/Solidus appeal of the relief from stay order).

Over the next 10 months, KMOB researched and filed a second/third/fourth renewed motion before the District Court for Rule 54 certification, as various developments in the Aviv Chapter 7 case, in this Chapter 11 case, and in various related Indivos/Solidus bankruptcy appeals transpired. In response to each KMOB renewed motion, Indivos/Solidus opposed the motion; in each instance, KMOB called upon Applicant to respond to the bankruptcy issues raised. In each instance, the District Court declined the Rule 54 certification, without prejudice, on new grounds.

When it became evident that the District Court was disinclined to grant the requested Rule 54 certification, Applicant recommended a different course of action to Debtor, involving litigation of the merits of the remaining claims, to be followed by an appeal of the final judgment. Debtor's then-existing management rejected this course of action. Additionally, Applicant believed that in the absence of any progress in prosecuting the District Court Patent Litigation, Debtor's Chapter 11 case was at risk of being converted. Debtor's shareholders were persuaded that the only likely source of significant recovery on their investment would be from successful

appeal of the District Court summary judgment ruling on patent ownership. Despite efforts, Debtor had been unable to find any other counsel willing to recommence the District Court Patent Litigation (KMOB was only willing to pursue the Rule 54 certification appeal). Consequently, to induce Applicant to step forward and prosecute the District Court Patent Litigation through any trial and subsequent appeal, certain of Debtor's shareholders (not including Hoffman) agreed to pay $195,000.00 to defray the costs of prosecuting Debtor's claims, and Debtor's concurrent management change in late 2007, Debtor directed CGS to prosecute the District Court Patent Litigation to conclusion, and the parties stipulated to full relief from stay to recommence that litigation. The order granting relief became effective on December 5, 2007.

On December 14, 2007, Solidus consented to entry of an order for bankruptcy relief and Indivos filed a voluntary bankruptcy petition, with both cases being filed in the U. S. Bankruptcy Court for the Central District of California. After incurring $330,000,000 in secured and unsecured debt, Indivos/Solidus proposed a fire sale of all assets at an ex parte hearing – including the subject patents. Debtor objected to the sale free and clear of its claims, and argued that the purported "secured creditors" auction would result in a credit bid with no proceeds to unsecured creditors (which is what occurred). In March 2008, the Central District Bankruptcy Court entered an order approving the asset sale to YOU Technology, but reserving Debtor Excel's claims to the disputed patents. The Central District Bankruptcy Court also entered an order granting relief from stay allowing Debtor Excel to prosecute the District Court Patent Litigation to judgment.

In January 2008, Debtor filed a motion for summary judgment and a motion to dismiss Indivos/Solidus claims in the District Court Patent Litigation. Indivos/Solidus filed opposition. In April 2008, the District Court granted Debtor's motions and dismissed 19 asserted damages claims, with Indivos/Solidus and YOU Technology taking nothing. The District Court also

determined that "[a]ll claims, counterclaims, and counter-counterclaims asserted in this proceeding have been resolved ..." Applicant concluded that based on this ruling, final judgment would enter by operation of F.R.C.P. Rule 58 and F.R.App.P. Rule 4, in September 2008.

In September 2008, Applicant filed its appeal of the now-final judgment to the Federal Circuit Court of Appeals in Washington DC. Applicant prepared the appellate record, researched and prepared Debtor's appellate briefs, and traveled to Washington DC for oral argument. Based on the existing record, the Federal Circuit affirmed the District Court's summary judgment order, but did not set aside the District Court's dismissal of the nineteen Indivos/Solidus damages claims (which materially benefitted the Stock Proceeds Turnover Litigation).

Applicant had previously argued to this Court that conclusion of the District Court Patent Litigation was not necessary to resolve the Stock Proceeds Turnover Litigation; however, by falsely claiming that Debtor had committed patent infringement, Indivos/Solidus forced Debtor to litigate a case that had no true bearing on the turnover proceedings. Not only did this litigation tactic substantially increase the cost of administration for this Chapter 11 case, but it also delayed progress in this Chapter 11 case by nearly four years.

In connection with the foregoing, over the past 5½ years, Applicant has expended time at a **net** cost to the estate of $288,842.00.

<u>REORGANIZATION PLAN(S)</u>

From the outset of this Chapter 11 case, Applicant advised Debtor's principals that a promptly-confirmed reorganization plan was the optimal resolution for debtor and its creditors insofar as it would allow Debtor to orderly liquidate its claims in the Turnover Proceeding and in the District Court Patent Litigation. Applicant instructed Debtor that it would need to raise sufficient new equity capital to both pay its creditors and to fund its pending litigation matters.

Debtor's then-existing management proved unable to raise any funds beyond the $150,000.00 retainer paid to special counsel KMOB in March 2005.

Indivos/Solidus Plan. On the literal eve of Applicant's engagement, Indivos/Solidus filed a creditors proposed reorganization plan and related disclosure statement offering a one-time lump sum payment in exchange for release of Debtor's claims in the District Court Patent Litigation and possession of the escrow funds proceeds. Unfortunately, the proposed plan and disclosure statement were improperly served on all Debtor's creditors and shareholders – in violation of Rule 3017 – before the disclosure statement was approved by this Court. Applicant immediately brought this error to opposing counsel's attention, but opposing counsel's response was essentially dismissive. The Court ordered the U.S. Trustee to conduct an independent investigation into the consequences of this error, sought briefs from the parties regarding the available remedies, and eventually issued sanctions against Indivos/Solidus counsel.

Shortly after the sanctions were paid (several months later), Indivos/Solidus filed a second proposed reorganization plan and disclosure statement. Applicant and others filed various objections to the proposed plan and to the new disclosure statement. Applicant also sought to obtain discovery through a Rule 2004 examination regarding the value of the royalty payments due to Debtor from escrow-holder U.S. Bank. Indivos/Solidus opposed the discovery requests, and the Court sought briefing on the issue. The Court also expressed its concern that no plan would be confirmed so long as the Indivos/Solidus claims remained unliquidated. Eventually, Indivos/Solidus withdrew its second proposed reorganization plan and disclosure statement.

Debtor's Plan. As described above, Applicant sought to have Debtor find new funds sufficient to both pay creditors and litigate Debtor's various pending claims, as a basis for funding a Chapter 11 reorganization plan – but Debtor's management was unable or unwilling to do so,

despite Applicant's grave and repeated concerns about the likely conversion of the Chapter 11 case. Applicant did prepare various outlines, however, for Debtor's investors' consideration.

However, once the Court had expressed its concern that no plan could be confirmed so long as the Indivos/Solidus claims remained unliquidated, Applicant's attention turned to finding a means to prosecute the District Court Patent Litigation to conclusion. As set forth above, the District Court Patent Litigation was eventually prosecuted to conclusion by Applicant itself.

In connection with the foregoing, over the past 5½ years, Applicant has expended time at a cost to the estate of $156,359.00.

## SLAPP LITIGATION

In 2006, Indivos/Solidus filed a lawsuit against Debtor seeking an injunction prohibiting Debtor from filing any additional lawsuits – particularly a lawsuit threatening the prior trustees of the voting trust at issue in the Turnover Litigation. Applicant researched and prepared a motion to dismiss the subject lawsuit, and obtained a judgment on the pleadings with respect to that claim. Indivos/Solidus appealed the judgment, but abandoned the appeal subsequently.

Debtor filed a counterclaim in the subject action naming as defendants the prior trustees of the voting trust, claiming that these individuals had caused the harm suffered by Debtor in its inability to have recovered the escrowed funds. Applicant conducted various discovery in the matter, then obtained a stay of the proceedings pending the outcome of the Turnover Litigation.

In connection with the foregoing, over the past 5½ years, Applicant expended time at a cost to the estate of $28,540.00.

## AAA ARBITRATION

In June 2003, Indivos instituted an arbitration before the American Arbitration Association against Excel and Hoffman (Excel's then-President) for their alleged breaches of a June 2000 settlement agreement between Indivos and Hoffman (AAA Arbitration). Hoffman

raised several counterclaims against Indivos. In May 2004, the arbitrator ruled that Hoffman was liable to Indivos for certain breaches of his obligations under the settlement agreement, and that Excel was liable as Hoffman's alter ego for certain breaches. The AAA Arbitration was stayed by Debtor's Chapter 11 filing in June 2004.

In June 2005, Indivos/Solidus sought to recommence the arbitration, and the arbitrator agreed to do so. When Applicant objected to this action, the arbitrator advised Applicant that he would only proceed with those issues which he deemed not to violate the automatic stay. In light of the arbitrator's pre-existing alter ego ruling, neither Applicant nor Debtor's management were comfortable with the arbitrator's vaguely stated intentions, particularly since the arbitrator had already scheduled his final arbitration session to proceed. Applicant prepared and filed an adversary proceeding complaint seeking declaratory and injunctive relief. Indivos/Solidus opposed the injunctive relief, and its counsel assured the Court that the continued arbitration could pose no harm to Debtor because no further evidence would be submitted. On that basis, the Court denied Debtor's requested injunction. Within days thereafter, the arbitrator advised all remaining parties (not including Debtor) that further evidence would be proffered by Indivos and accepted by the arbitrator. Debtor immediately renewed its application for injunctive relief; opposing counsel was unable to reconcile his actions with his prior Court statements, and the Court issued the requested injunction order.

Indivos/Solidus filed an appeal to the Bankruptcy Appellate Panel of the Court's injunction order. Applicant researched, prepared and filed responsive briefs as required by the Bankruptcy Appellate Panel, and argued the appeal. The Panel affirmed this Court's order.

Indivos/Solidus filed an appeal of the BAP ruling to the Ninth Circuit Court of Appeals. Applicant researched, prepared and filed responsive briefs as required by the Court, and argued the appeal. In late 2007, the Ninth Circuit issued a reported decision setting forth a new

test for bankruptcy-related injunctive relief for arbitration matters, but recognizing that passage of time during Debtor's Chapter 11 case might justify new consideration.

With the change in Debtor's management, Debtor was now prepared to move forward with the District Court Patent Litigation. At the same approximate time, Indivos/Solidus filed their own bankruptcy proceedings and were not interested in recommencing the AAA Arbitration. The subsequent sale of Indivos/Solidus assets to YOU Technology, and the subsequent resolution of the District Court Patent Litigation (and appeal), and the recent mediated settlement of the Stock Proceeds Turnover Litigation, has resolved all claims in the AAA Arbitration.

In connection with the foregoing, over the past 5½ years, Applicant has expended time at a cost to the estate of $117,361.00.

## CLAIMS ANALYSIS

Upon reviewing Debtor's filed Schedules, Applicant became aware that Debtor had a very few actual creditors (primarily former attorneys or insiders) but substantially more equityholders. Beyond an initial familiarization with the filed claims, Applicant did not perceive an immediate need to challenge creditor claims since there was no money to pay those claims until the District Court Patent Litigation and Turnover Litigation were successfully concluded.

Indivos/Solidus concluded differently. When former President Ned Hoffman filed his place-holder claim for indemnification, Indivos/Solidus immediately sought to challenge that claim while Debtor merely sought to reserve its rights to objection for a future determination. Thus, Applicant and Debtor were thereafter unwillingly drawn into the substantial briefing and then discovery battle between Indivos/Solidus and Hoffman – which eventually concluded with both parties agreeing to reserve their respective rights in the objection for a future determination.

In connection with the foregoing, over the past 5½ years, Applicant has expended time at a cost to the estate of $12,530.00.

## FEE APPLICATION ("FEE")

Applicant has spent significant effort in preparing this interim fee application, however, due to billing cutoff dates, only part of the time spent is reflected in the present fee application, consisting of 56.1 hours billed, at a cost to the estate of $21,300.00.

## CONCLUSION

In the course of representation in these matters from March 2005 through September 2010, Applicant has devoted in excess of 2,900 hours of professional services, as indicated on Applicant's Project Billing Statement, which is attached as Exhibit A. The Statement identifies the individuals who have performed specific services and is summarized as follows:

| Name | Hours | Rate |
|---|---|---|
| Scott L. Goodsell (SLG) | 28.90 | 425.00/hr. |
| Scott L. Goodsell (SLG) | 1,329.40 | 400.00/hr. |
| Gregory J. Charles (GJC) | 1,285.65 | 400.00/hr. |
| Gregory J. Charles (GJC) | 242.75 | 350.00/hr. |
| Gregory J. Charles (GJC) | 10.00 | No Charge |
| Marc L. Pinckney (MLP) | 6.40 | 330.00/hr. |
| William J. Healy (WJH) | 4.40 | 330.00/hr. |
| Kari L. Silva (KLS) | 6.60 | 250.00/hr. |
| Jason Chorley (JC) (paralegal) | 4.40 | 75.00/hr. |

In view of the time expended and the responsibilities assumed, Applicant respectfully submits that the reasonable value of its services hereinabove set forth is $953,409.00.

Applicant has also expended the sum of $11,589.27 for court fees, hearing and deposition transcripts, photocopying, postage, telephone and other costs, as follows:

| | |
|---|---|
| Photocopy Charges | $ 1,860.11 |
| Computer Research Charges | 3,663.59 |
| Travel Expense | 1,390.16 |
| Postage Charges | 596.17 |
| Court Fees | 78.00 |
| Telephone Charges | 117.20 |
| Delivery Charges | 704.68 |
| Outside Services | 3,179.36 |

Specific expenses are attached hereto as Exhibit B. As a result of Applicant's adopting the Guidelines for Compensation of Professionals issued by the Bankruptcy Court for the Northern District of California, all request for costs reimbursement are based on the Guidelines.

Applicant believes that the services so rendered and costs so incurred herein were necessary and that the fees and costs requested constitute reasonable and necessary fees expended on behalf of the estate. In accordance with the Disclosure of Compensation submitted by Applicant in March 2005, Applicant has not previously received any retainer from the debtor in connection with the Chapter 11 case. No part of the monies previously received by Applicant has been shared with any person, and no agreement or understanding exists between Applicant and any other person for the sharing of compensation received or to be received for services rendered in connection with this case, except with the members and associates of Applicant's law firm.

Applicant is informed and believes that as a result of the Stock Proceeds Turnover Litigation settlement, Debtor will have approximately $925,000 in funds of the estate, and that debtor's post-petition debts are current. Special Counsel SVLG will submit a fee application for about $200,000 at a future point in time. Applicant will likely incur additional fees and costs after the last date of this fee application and before this Chapter 11 case is concluded. Insofar as these Chapter 11 administrative claims may exceed the total cash available to Debtor at this time, Applicant recommends that the Court approve Applicant's fees and costs as requested, and permit payment of costs in full as requested, and allow Debtor to pay 75% of the approved fees plus 100% of costs as an interim payment award.

WHEREFORE, Applicant prays that this court enter its order (i) approving as interim compensation those Chapter 11 attorneys' fees incurred and costs expended by Applicant from March 2005 through September 2010 in its representation as further set forth above;

/////

(ii) authorizing the debtor to pay to this Applicant for services rendered and costs expended but not yet compensated by the debtor as set forth in this Application (or such interim amount), and

(iii) for such further relief as this court deems just and proper.

DATED: November 17, 2010                    CAMPEAU GOODSELL SMITH


                                            By    /s/ Scott L. Goodsell
                                                  Scott L. Goodsell
                                                  Attorneys for Debtor

## CERTIFICATION ON FIRST INTERIM APPLICATION FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES BY ATTORNEY FOR DEBTOR

I, Scott L. Goodsell, say:

1. I am a principal with the law firm of Campeau Goodsell Smith, attorneys of record for the debtor herein. I make this declaration in support of the said law firm's application for interim compensation and reimbursement of expenses as attorneys for the debtor in this Chapter 11 case. If called as a witness, I would competently testify as follows:

2. In accordance with the Disclosure of Compensation submitted by Applicant in March 2005, Applicant has not previously received any monies from the debtor for the Chapter 11 case. Applicant has received $17,000.00 awarded as sanctions against Indivos/Solidus and/or their counsel, and Applicant has received $195,000.00 from certain of Debtor's shareholders which was earmarked specifically for District Court Patent Litigation fees and costs.

3. No part of the monies previously received by Applicant has been shared with any person, and no agreement or understanding exists between Applicant and any other person for the sharing of compensation received or to be received for services rendered in connection with this case, except with the members and associates of Applicant's law firm.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at San Jose, California, on November 17, 2010.

/s/ Scott L. Goodsell
Scott L. Goodsell