REIDUN STRØMSHEIM # 104938
JOHNSON C. W. LEE # 253775
STROMSHEIM & ASSOCIATES
201 California Street, Suite 350
San Francisco, California 94111
Telephone: (415) 989-4100
Fax: (415) 989-2235
rstromsheim@stromsheim.com
jlee@stromsheim.com

Attorneys for Trustee,
MARC DEL PIERO

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

EXCEL INNOVATIONS, INC.,

TAX IDN 94-3094727

Debtor.

Case No. 04-53874 ASW

Chapter 7

Date: February 8, 2013
Time: 2:15 p.m.
Judge: Honorable Arthur S. Weissbrodt
Place: 280 South First Street, Room 3020
San Jose, California 95113

**TRUSTEE'S RESPONSE TO JEFFERSON T. STAMP'S
SUPPLEMENTAL MEMORANDUM**

## TABLE OF CONTENTS

Page No.

I. Mr. Stamp Asserts a New Claim to the Surprise of All Parties Under the Guise of an Amendment to Claim No. 14, Which Is Untimely and Does Not Relate Back to the Original Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. The Allowance of Claims Is an Equitable Process, and Mr. Stamp Is Barred From Asserting His New Claim to the Detriment of All the Parties in Interest. . . . . . . . . 3

III. Mr. Stamp Is Not Entitled to Any Additional Compensation Under the Attorney-Client Agreement Because Mr. Stamp's Claim to an Hourly Rate Is Inconsistent With the Compensation That Was Being Paid to Him and the Purpose and Terms of the Agreement to Contain Costs. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV. Even If Mr. Stamp Was Entitled to Some Compensation Under the Agreement, Mr. Stamp's Fees Must Be Disallowed Because They Far Exceed the Reasonable Value of the Legal Services Provided and Mr. Stamp Failed to Exercise Billing Judgment At All Times. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V. Mr. Stamp's Claimed Attorney's Lien is Invalid Because It Does Not Comply with California Rules of Professional Conduct, Rule 3-300.. . . . . . . . . . . . . . . . . . . . 8

    A. Mr. Stamp's claim reflects that he did not comply with Rule 3-300 so the asserted attorney's lien is invalid and unenforceable.. . . . . . . . . . . . . . . . . . . 9

    B. Mr. Stamp's alleged oral agreement modifying or extending his claimed attorney's lien does not satisfy the requirements of Rule 3-300. . . . . . . . . . . . . 10

    C. Mr. Stamp's claimed attorney's lien was not listed as a secured debt in the Debtor's schedules despite Mr. Stamp's assistance preparing the schedules and his post-petition services as in-house counsel . . . . . . . . . . . . . . 11

    D. The purported fee agreements are voidable because Mr. Stamp did not provide the clients with a duplicate copy of the signed agreements at the time of contracting. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VI. To the Extent Mr. Stamp Has a Secured Claim to the Proceeds, the Trustee May Surcharge Mr. Stamp's Collateral for the Necessary Costs and Expenses of Preserving the Property Under 11 U.S.C. § 506(c). . . . . . . . . . . . . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# **TABLE OF AUTHORITIES**

Page No(s).

FEDERAL CASES

*Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380 (1993) . . . . . . . . . . . . . . . 4

*Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.*, 924 F.2d 955 (9th Cir. 1991) . . . . . 7

*In re Westgate-California Corp.*, 621 F.2d 983 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Georgia-Pac. Co.*, 421 F.2d 92 (9th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . 4

*California State Bd. of Equalization v. Coast Radio Prod.*, 228 F.2d 520 (9th Cir. 1955) . . . . . . 4

*In re Int'l Horizons, Inc.*, 751 F.2d 1213 (11th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Digesti & Peck v. Kitchen Factors, Inc. (In re Kitchen Factors, Inc.)*, 143 B.R. 560
(9th Cir. BAP 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Schoenmann v. Bach Constr. (In re Segovia)*, 387 B.R. 773 (Bankr. N.D. Cal. 2008) . . . . . . . 7, 8

*In re Pacific Gas & Elec. Co.*, 311 B.R. 84 (Bankr. N.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . 4

*In re Bouzas*, 294 B.R. 318 (Bankr. N.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Grivas*, 123 B.R. 876 (Bankr. S.D. Cal. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*In re Suntastic USA, Inc.*, 269 B.R. 846 (Bankr. D. Az. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 13

STATE CASES

*Ames v. State Bar of California*, 8 Cal. 3d 910 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*BGJ Assoc., LLC v. Wilson*, 113 Cal. App. 4th 1217 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bluxome Street Assoc. v. Fireman's Fund Ins. Co.*, 206 Cal. App. 3d 1149 (1988) . . . . . . . . . . 10

*Fletcher v. Davis*, 33 Cal. 4th 61 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 11

*Fletcher v. Davis*, 130 Cal. Rptr. 2d 696 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Passante v. McWilliam*, 53 Cal. App. 4th 1240, 1243 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . 10

FEDERAL STATUTE

11 U.S.C. § 506 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CALIFORNIA STATUTE AND RULE

California Rules of Professional Conduct, Rule 3-300 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

California Business & Professions Code § 6148 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

TO THE HONORABLE ARTHUR S. WEISSBRODT, UNITED STATES BANKRUPTCY JUDGE; AND JEFFERSON T. STAMP:

COMES NOW, Marc Del Piero (the "Trustee"), the Chapter 7 trustee of the bankruptcy estate of Excel Innovations, Inc. (the "Debtor" or "Excel"), and hereby submits this response to the supplemental memorandum filed by Jefferson T. Stamp ("Mr. Stamp"), at ECF No. 926, as to (1) Mr. Stamp's motion to enforce an alleged attorney's lien against property of the estate; (2) the Trustee's objection to Claim No. 14, as amended; and (3) Mr. Stamp's objection to the Trustee's motion to approve the compromise of claims among several administrative claimants.

This is a case in which Mr. Stamp admits he already received compensation from Excel pre-petition, and seeks to be paid even more from a limited sum of money that others generated after years of litigation in bankruptcy, when there is precious little in the estate to pay the administrative and general unsecured creditors under a carefully negotiated compromise. Mr. Stamp has made two claims in this case: (1) Claim No. 14, originally filed on June 11, 2009 for a general unsecured claim for the balance of a bonus in the amount of $20,000; and (2) Claim No. 25, filed on January 10, 2012 as a Chapter 11 administrative claim for attorney's fees in the amount of $156,000, which included the alleged bonus of $20,000 referenced in Claim No. 14. The Trustee objected to Claim No. 25 on the grounds that Mr. Stamp was not entitled to an administrative claim for his attorney's fees, in relevant part, because Mr. Stamp failed to satisfy the employment and compensation requirements at 11 U.S.C. §§ 327 and 330. *See* ECF No. 851. The Court sustained the Trustee's objection and entered an order disallowing Claim No. 25. *See* ECF No. 879.

**I. Mr. Stamp Asserts a New Claim to the Surprise of All Parties Under the Guise of an Amendment to Claim No. 14, Which Is Untimely and Does Not Relate Back to the Original Claim.**

After the Trustee noticed out the compromise reached with the administrative creditors that excluded Mr. Stamp's disallowed claim and objected to Claim No. 14 in November 2012, Mr. Stamp clearly took the position that if he was not going to be paid with everyone else, then he should be paid before anyone else is paid. Moreover, if Mr. Stamp could not get paid for his alleged post-petition work, he would go back to pad his hours for compensation on a new pre-

petition claim under the cover of an amendment to Claim No. 14.[1] Mr. Stamp filed the purported amendment on December 5, 2012 – *almost a year after the bar date, 3 ½ years after filing the original claim, and 8 ½ years since the commencement of this case*. To the surprise of all parties in interest and this Court, Mr. Stamp now claims to have an attorney's lien for as much as $248,000!

The decision to allow an amended claim is within the sound discretion of the court. *In re Grivas*, 123 B.R. 876, 878 (Bankr. S.D. Cal. 1991). Although amendments are generally allowed to a timely filed proof of claim, such as to cure a defect in the original claim, describe the claim with greater particularity, or plead a new theory on previously filed facts, an amendment made after the bar date should not be allowed if it represents only an attempt to file a new claim under the guise of an amendment. *In re Int'l Horizons, Inc.*, 751 F.2d 1213, 1216 (11th Cir. 1985). The original claim must "give fair notice of the conduct, transaction or occurrence that forms the basis of the claim asserted in the amendment." *In re Westgate-California Corp.*, 621 F.2d 983, 984 (9th Cir. 1980). Amendments are allowed "only where the original claim prompted notice to the court of the existence, nature, and amount of the [amended] claim." *Int'l Horizons*, 751 F.2d at 1217.

When Mr. Stamp originally filed Claim No. 14 on June 11, 2009, the proof of claim listed only a general unsecured claim for $20,000, which represented the balance of a bonus allegedly owed pursuant to the attached Amendment to Attorney-Client Agreement dated August 31, 2003 (the "Amended Agreement"). The original claim contained no other components and attached no further documents. On these facts, the Trustee and any other party in interest could not have fair notice that Mr. Stamp would amend his Claim No. 14 to assert an entirely new claim for attorney's fees allegedly earned under an hourly rate, which is not stated or described, and for the period of January 1, 2004 to June 17, 2004, especially when Mr. Stamp's employment terminated under the express terms of the Amended Agreement on December 31, 2003; or further, to assert that this new claim and the bonus are secured by an attorney's lien that is not mentioned anywhere

---

[1] Claim No. 14, as amended, asserts Mr. Stamp is owed $228,000 for attorney services over 28 weeks from January 1, 2004 to the petition date, June 17, 2004, at 40 hours per week, at $250 per hour under the Agreement, and the balance of the bonus of $20,000, for a total of $248,000. Mr. Stamp's recently filed memorandum corrects this claim by calculating only 24 weeks during the same period, at 40 hours per week, and $250 per hour, for a total of $240,000, less $44,000 paid pre-petition, plus the $20,000 bonus, for a total of $216,0000.

in the Amended Agreement. Mr. Stamp's attempt to take the lion's share of the limited estate is not a claim that has any relation back to the original claim. The initial proof of an alleged bonus did not give fair notice of any basis upon which Mr. Stamp now alleges to have a claim to additional compensation at an hourly rate and that these fees are secured by an attorney's lien against the entire proceeds of the estate. Accordingly, Mr. Stamp's amendment to Claim No. 14 must be disallowed.

## II. The Allowance of Claims Is an Equitable Process, and Mr. Stamp Is Barred From Asserting His New Claim to the Detriment of All the Parties in Interest.

By filing a claim against the estate, a creditor submits himself to the court's equitable jurisdiction and triggers the process of allowance and disallowance of claims. *See Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58-59 (1989). Significantly, Mr. Stamp raised this new pre-petition claim for as much as $248,000, purportedly secured by an attorney's lien, only after the Court disallowed Mr. Stamp's administrative claim in its entirety. Throughout the narrative to Claim No. 25, Mr. Stamp asserts consistently that his "compensation was a flat rate of $8,000 per month plus an incentive bonus of $25,000" from April 1, 2003 through December 31, 2003; "[his] salary continued to be paid at the rate of $8,000 per month" after the expiration of the Amended Agreement, "the documents show that [Mr. Stamp] continued to receive payment of $8,000 per month," and Mr. Stamp "continued to receive [his] salary of $8,000 per month until the filing of the bankruptcy petition." *See* ECF No. 25-1, at 2, 3, 5. Indeed, Mr. Stamp's claim for administrative priority for his attorney's fees of $136,000 is derived from calculating his "regular salary of $8,000 per month" for 17 months post-petition. *See id*. at 6. If instead, Mr. Stamp was due an hourly rate of $250 per hour after the termination of the Amended Agreement as he now claims, Mr. Stamp made no claim to that fact. Mr. Stamp also did not mention the supposed attorney's lien, which presumably would have secured either form of compensation. Instead, Mr. Stamp took the firm position that his salary was $8,000 per month, which was paid in full to the petition date and was the only attorney's fee to which he was entitled into the post-petition period.

Mr. Stamp is estopped from now asserting any alternative manner of compensation, such as an hourly rate of $250 per hour between January 1, 2004 to June 17, 2004, when Mr. Stamp

admitted that his salary was $8,000 per month for which he was paid during that period, and made no mention of any deferred attorney's fees. *See* ECF No. 25-1. The doctrine of equitable estoppel prevents a party from assuming inconsistent positions to the detriment of another party. *United States v. Georgia-Pac. Co.*, 421 F.2d 92, 96 (9th Cir. 1970). In the Ninth Circuit, four elements must be present to establish the defense of estoppel: (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury. *California State Bd. of Equalization v. Coast Radio Prod.*, 228 F.2d 520, 525 (9th Cir. 1955). For example, a party's silence will work an estoppel if he has a duty to speak under the circumstances. No other party is as familiar with Mr. Stamp's claim for attorney's fees and a lien than Mr. Stamp. Yet Mr. Stamp said nothing for *8 ½ years* since the commencement of this case, allowed the creditors and the Trustee to act on the facts of his claims as originally filed, and now makes an absolute claim to the merger proceeds that others brought into the estate after years of litigation and upend the compromise that will resolve the disputes over the money.

As such, Mr. Stamp is also barred by the doctrine of laches from asserting a claim after an unreasonable delay when the administrative creditors have undertaken great expense to collect the estate's assets and the Trustee has crafted a compromise that will finally bring this case to a close. As the Trustee pointed out in a related issue regarding the timeliness of the amended claim, Mr. Stamp has offered no excuse for his neglect. *Cf. In re Pacific Gas & Elec. Co.*, 311 B.R. 84, 89-91 (Bankr. N.D. Cal. 2004) (J. Montali) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380 (1993)).

### III. Mr. Stamp Is Not Entitled to Any Additional Compensation Under the Attorney-Client Agreement Because Mr. Stamp's Claim to an Hourly Rate Is Inconsistent With the Compensation That Was Being Paid to Him and the Purpose and Terms of the Agreement to Contain Costs.

The Trustee agrees with the analysis of creditors David Mendelsohn, Larry Ginsburg and Harold Silen (collectively, "Mendelsohn") that Mr. Stamp is not entitled to any additional compensation under the Attorney-Client Agreement dated March 19, 2012 (the "Agreement) or

the Amended Agreement. *See* ECF No. 911. Contrary to Mr. Stamp's assertion that the Trustee "admits that the full amount due under Paragraph 5.6 [of the Agreement] was not paid," the Trustee strongly disputes the contention that Mr. Stamp was entitled to any hourly compensation under that provision at all. The Trustee further incorporates his earlier argument that the bonus should be disallowed, as set forth in the notice of objection at ECF No. 907.

Mr. Stamp understood that Excel was "hamstrung with limited resources," but that Excel wished to secure adequate legal representation and at the same time to contain costs. *See* ECF No. 926, at 2:5-9. As Mendelsohn pointed out, the Agreement provided for a fixed fee arrangement: Excel retained Mr. Stamp for a monthly retainer fee without any minimum billable time requirements or the need to quantify service in terms of hours, and paid Mr. Stamp for his legal services with a monthly retainer fee and costs. *See* ECF No. 910, at 2; Claim No. 14-2, Ex. A, at 6. The Agreement defined the monthly retainer as $8,000 per month, payable in two equal semi-monthly installments on or before the 1st and 16th day of each month during the engagement period.[2] *See* Claim No. 14-2, Ex. A, at ¶ 2.1. The engagement period was supposed to last from April 1, 2003 to September 30, 2003, but was extended for an additional three months to December 31, 2003. *See* Claim No. 14-2, Ex. B, ¶ 1.

Thereafter, Mr. Stamp claims that his role "evolved" to that of in-house general counsel. *See* ECF No. 914, 4:3-6. In response to the fact that there is no written agreement concerning his retention or compensation after the end of the engagement period, Mr. Stamp states that they were just "plain too busy." *See id.* at 4:8-10. (By comparison, the Amended Agreement was a single page.) At the same time that Mr. Stamp claims to have become a common law employee after January 1, 2004, Mr. Stamp continues to refer to provisions of the Agreement that terminated on December 31, 2004. Mr. Stamp suggests Paragraph 5.6 triggered an incredible raise from the $8,000 per month that Excel had been paying him, to $40,000 per month that he now believes was due to him under an hourly rate arrangement! *See* ECF No. 927, at 4:3-8. This is completely contrary to Mr. Stamp's position in Claim No. 25, the understanding that Excel wished to cap its

---

[2] The Agreement originally provided that Excel would pay $4,500 of Mr. Stamp's monthly flat fee, and Excel's in-house counsel would pay the remaining $3,500. Excel assumed in-house counsel's obligation to pay Mr. Stamp's fee under the Amended Agreement. *See* Claim No. 14-2, Ex. B, at ¶ 2.

STROMSHEIM & ASSOCIATES

legal fees, and the fact that Excel continued to pay Mr. Stamp the same flat rate of $8,000 per month after December 31, 2003. Indeed, the Debtor's statement of financial affairs cited by Mr. Stamp demonstrates that Excel paid Mr. Stamp $8,000 each month in the ninety days before the petition date, $4,000 each on the 1st and 15th of every month just as the parties agreed. *See* ECF No. 18, at 34. Moreover, Mr. Stamp admits to receiving $8,000 per month for 5 ½ months between January 1, 2004 and June 17, 2004. *See* ECF No. 927, at 5:11-16. Mr. Stamp now claims, "[i]n recognition of Excel's limited resources, I agreed to defer $20,000 of the bonus (80% of what was owed). I also agreed to defer 80% of what was owed under the transitional $250 hourly fee arrangement, accepting $8,000 per month instead of the approximately $40,000 per month that would be owed under Paragraph 5.6 of the Agreement." *Id.* (citations omitted). There is no evidence of any such agreement. Even the prospect of such an amendment or modification to the terms of Mr. Stamp's compensation is ludicrous! By Mr. Stamp's math, Mr. Stamp is essentially claiming his annual salary increased upwards to $520,000 (1 year = 52 weeks, 52 x 40 hours/week x $250/hour = $520,000). Under such an arrangement, the $50,000 raised from Betsy Levy mentioned by Mr. Stamp as being used to "pay his salary" would make little sense as that "warchest" would be entirely consumed by Mr. Stamp's fees in a little over a month. *See* ECF No. 927, at 4.

As Mendelsohn also noted, the hourly rate is specifically limited to those "attorney services that are necessarily performed by [Mr. Stamp], either to protect the interests of [Excel] and/or as mandated by the Professional Rules of Conduct." *See* ECF No. 911, at 6. The various legal services that Mr. Stamp claims to have provided to Excel were not so necessary as to protect Excel's interest, especially when Excel had retained several other attorneys to conduct litigation. *See*, *generally*, ECF Nos. 927, and 926, at 6:18-20. Mr. Stamp presents no evidence that he ever billed Excel for his time between January 1, 2004 and June 17, 2004. In fact, the Debtor's schedules do not list the estate as owing Mr. Stamp any additional compensation because Mr. Stamp was paid the amount due to him every two weeks to the petition date. *See* ECF No. 18, at 13-20.

//

The Trustee notes that Paragraph 5.5 of the Agreement required Mr. Stamp to expedite the transition of his responsibilities to new counsel – likely so Excel would not be slapped with a huge bill based on the $250/hour rate set forth in the following paragraph. *See* Claim No. 14-2, Ex. A, at 8. If Mr. Stamp agreed to continue on as an employee of Excel after the engagement period, it is clear that Mr. Stamp and Excel understood that his "salary" remained the same $8,000 per month that he earned as a monthly retainer fee. Mr. Stamp cannot go back now and claim hourly compensation under Paragraph 5.6.

### IV. Even If Mr. Stamp Was Entitled to Some Compensation Under the Agreement, Mr. Stamp's Fees Must Be Disallowed Because They Far Exceed the Reasonable Value of the Legal Services Provided and Mr. Stamp Failed to Exercise Billing Judgment At All Times.

Even if Mr. Stamp was entitled to additional compensation under the Agreement, the claim for attorney's fees and costs may be allowed only to the extent it is reasonable. *See Schoenmann v. Bach Constr. (In re Segovia)*, 387 B.R. 773, 779 (Bankr. N.D. Cal. 2008) (J. Carlson). Section 502(b)(4) provides that a pre-petition claim based on services performed by an attorney or an insider shall be disallowed to the extent the claim exceeds the reasonable value of the services provided. *Id*. A claim for attorney's fees is unreasonable under federal law to the extent the attorney seeks fees that are disproportionate to the likely recovery. *See id.* (citing *Unsecured Creditors' Comm. v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 959 (9th Cir. 1991)). Mr. Stamp was required to scale his efforts to the reasonably expected recovery, not the potential optimum recovery. *See id.* (citing *Digesti & Peck v. Kitchen Factors, Inc. (In re Kitchen Factors, Inc.)*, 143 B.R. 560, 562 (9th Cir. BAP 1992)).

Although Mr. Stamp seems to suggest the patent claims alone were worth as much as $200 million, this large number is dispelled by other figures that placed Excel's value at just $5 million and the ultimate recovery of only $925,000 to the estate. *See* ECF Nos. 729, 926, at 6, 12. Mr. Stamp makes an excessive claim to at least $240,000 in hourly fees, which he claims to have ran up in just 5 ½ months. *See* ECF No. 926, at 7:2-7. This is grossly unreasonable considering Mr. Stamp understood that Excel expected a "torrent of litigation." *See id.* at 2:5-7. As discussed above, Mr. Stamp presents no evidence of timeslips detailing how he allocated his time, any

STROMSHEIM & ASSOCIATES

Case: 04-53874 Doc# 928 Filed: 01/25/13 Entered: 01/25/13 23:52:21 Page 11 of 17

6

description of the services performed during this time that were necessary to protect Excel's interests or mandated by the Professional Rules of Conduct, or any invoices to Excel during the entire period that Mr. Stamp was supposedly billing $250 per hour. Instead, it seems that Mr. Stamp went back ten years to charge the Debtor for time based on full-time employment, whether or not Mr. Stamp actually worked on a matter necessary to protect Excel's interest. As the Supreme Court has stated, an attorney should not in any context be compensated for hours that are not reasonably expended. *Segovia*, 387 B.R. at 779-80 (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983)). In this case, Excel already paid Mr. Stamp a monthly fee or salary of $8,000, which the parties agreed to be reasonable, so Mr. Stamp should not be entitled to any further compensation from the estate.

### V. Mr. Stamp's Claimed Attorney's Lien is Invalid Because It Does Not Comply with California Rules of Professional Conduct, Rule 3-300.

An attorney who takes a charging lien in an hourly fee matter creates an adverse interest between the attorney and his client. *Fletcher v. Davis*, 33 Cal. 4th 61, 68-70 (2004).[3] An attorney's lien that does not strictly comply with Rule 3-300 is invalid and unenforceable. *Id*. at 71-72.

Rule 3-300, entitled Avoiding Interests Adverse to a Client, provides in pertinent part, that:

A member shall not enter into a business transaction with a client; or knowingly acquire an ownership, possessory, security, or other pecuniary interest adverse to a client, unless each of the following requirements has been satisfied:

(A) The transaction or acquisition and its terms are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which should reasonably have been understood by the client; and

(B) The client is advised in writing that the client may seek the advice of an independent lawyer of the client's choice and is given a reasonable opportunity to seek that advice; and

(C) The client thereafter consents in writing to the terms of the transaction or the terms of the acquisition.

//

---

[3] Notably, Mr. Stamp cites *In re Bouzas*, 294 B.R. 318 (Bankr. N.D. Cal. 2003) (J. Tchaikovsky), which cited the court of appeal's overturned decision in *Fletcher v. Davis*, 130 Cal. Rptr. 2d 696 (2003), *rev'd*, 33 Cal. 4th 61 (2004).

Rule 3-300 is intended to apply where an attorney wishes to obtain an interest in a client's property (ownership, possessory, security, or other pecuniary interest adverse to the client) in order to secure the amount of the attorney's past due or future fees. *Fletcher*, 33 Cal. 4th at 67. An attorney's charging lien is a security interest in the proceeds of litigation, an adverse interest within the meaning of Rule 3-300, and requires a client's informed written consent. *Id.* at 67-69. Thus, "[w]hen an attorney wishes to secure payment of hourly legal fees and costs of litigation by obtaining a charging lien against a client's future recovery," Rule 3-300 requires the attorney to "explain the transaction fully, to offer fair and reasonable terms, to provide a copy of the agreement, to give the client an opportunity to seek independent legal advice, and to secure the client's written consent." *Id.* at 71. The attorney must satisfy all three requirements. *BGJ Assoc., LLC v. Wilson*, 113 Cal. App. 4th 1217, 1226 (2003). It is the attorney's responsibility to comply with Rule 3-300. If the attorney fails to comply with the rule, the "lien may not be enforced" in a proceeding to enforce a charging lien. *Fletcher*, 33 Cal. 4th at 71-72.

### A. Mr. Stamp's claim reflects that he did not comply with Rule 3-300 so the asserted attorney's lien is invalid and unenforceable.

Mr. Stamp's claim reflects that he did not comply with Rule 3-300, particularly as to provisions (B) and (C), and therefore his claimed attorney's lien is invalid and unenforceable as a matter of law. On December 5, 2012, Mr. Stamp filed an amendment to Claim No. 14 and included as an exhibit the Agreement dated March 19, 2003 but effective April 1, 2003. The Agreement provides, in pertinent part:

> 4. Attorney's Lien. Clients hereby grant a lien against any settlement, judgment or other recovery or award to secure payment of Attorney's compensation and costs as provided under this Agreemen (sic) . . .

> 6.8. Legal Advice: Each of the Parties warrants, represents and agrees that, in executing and delivering this Agreement, such party does so freely and voluntarily, and that such party has had the opportunity to receive legal advice from an attorney before executing and delivering this Agreement.

Noticeably absent from the Agreement is compliance with provisions (B) and (C) of Rule 3-300 in that Mr. Stamp and the Agreement did not prior to delivery and execution advise the clients in writing that the clients may seek the advice of an independent lawyer of the clients' choice or give the clients a reasonable opportunity to seek that advice. To the extent that Mr.

Stamp argues the Agreement complied with Rule 3-300 because Excel president Ned Hoffman and attorney Ali Kamarei allegedly drafted the document and the parties (Mr. Stamp, Mr. Hoffman, and Mr. Kamarei) discussed the Agreement is without any merit. Actual consultation with another attorney does not relieve the member of the rule's obligation. *BGJ Assoc.*, 113 Cal. App. 4th at 1226. It is Mr. Stamp who had a duty to his clients to comply with Rule 3-300. Mr. Stamp failed in this regard. Mr. Stamp states that the parties met on March 19, 2003, discussed and finalized the agreement. *See* ECF No. 927, at 2:12-16. The parties executed the Agreement on the same day and the clients did not have a reasonable opportunity to seek the advice of independent counsel. *See* Claim No. 14-2, Ex. A, at 9. The clients' consent must have followed the opportunity to consult with independent counsel; it is not an alternative to such consultation. *See Passante v. McWilliam*, 53 Cal. App. 4th 1240, 1243, 1248 (1997). No amount of dialogue can cure Mr. Stamp's non-compliance with Rule 3-300. *Cf. Ames v. State Bar of California*, 8 Cal. 3d 910 (1973). To ensure the fairness of such dealings, it is incumbent upon the attorney entering into such transactions to advise the client to seek independent counsel.

The Amended Agreement does not save Mr. Stamp or his claimed attorney's lien. While Mr. Stamp may contend that the Amended Agreement extended his claim of an attorney's lien for another three months, the lien is likewise invalid and unenforceable without compliance with Rule 3-300. The Amended Agreement did not "cure" the defects in the original Agreement because it did not itself contain the required statement as to the client's right to consult with an independent attorney regarding the creation of the lien or the written consent of the client. *See Segovia*, 387 B.R. at 784.

> **B.** **Mr. Stamp's alleged oral agreement modifying or extending his claimed attorney's lien does not satisfy the requirements of Rule 3-300.**

The attorney's lien arises upon execution of the retainer agreement between the attorney and the client. *Bluxome Street Assoc. v. Fireman's Fund Ins. Co.*, 206 Cal. App. 3d 1149, 1158 (1988). However, Mr. Stamp's services terminated pursuant to the specific dates under the Agreement and the Amended Agreement. Claim No. 14, as amended, purports to assert an

//

attorney's lien for services rendered as an employee after December 31, 2003. Mr. Stamp is not entitled to an attorney's lien for services rendered as an employee.

Upon the termination of the Agreement, as amended, Mr. Stamp contends that he morphed from "general litigation counsel" into "in-house counsel" and "common law employee." *See* Claim No. 25-1, at 2. Mr. Stamp concedes that "[b]ecause of the history of my relationship with Mr. Hoffman over the prior 9 months, as well as the fact that we were just plain too busy, we did not put the employment agreement in writing." *See* ECF No. 914, at 4:7-10. Any oral agreement is contrary to the express language of the Agreement regarding termination and modification. In pertinent part, the "Agreement constitutes the entire agreement and understanding between the parties . . . This Agreement may not be modified unless in writing and signed by both parties . . . ." *See* Claim No. 14-2, Ex. A, at ¶ 6.1. Furthermore, the Agreement specifically provides, "Attorney shall at all times be deemed an independent contractor. Attorney shall not act nor hold himself out as acting as an agent, employee, or associate of Clients . . . ." *See id.* at ¶ 6.3. Mr. Stamp's assumed role as an employee was a new, independent agreement without the benefit of a written retainer agreement, or attorney's lien.

Regardless of Mr. Stamp's role after the engagement period, there is still no evidence of compliance with Rule 3-300, so any oral agreement is invalid and unenforceable relative to any attorney's lien. Mr. Stamp's implication that his relationship with Mr. Hoffman somehow justified his non-compliance with Rule 3-300 is absurd. Rule 3-300 requires full, written disclosure to the client simply so the client is protected from the attorney. *See Fletcher*, *supra*. Alternatively, Mr. Stamp's position as an employee meant he had to perfect any lien consistent with the California Commercial Code. There is no evidence he did so.

### C. Mr. Stamp's claimed attorney's lien was not listed as a secured debt in the Debtor's schedules despite Mr. Stamp's assistance preparing the schedules and his post-petition services as in-house counsel.

Claim No. 25 asserts, in relevant part, that Mr. Stamp "assisted Lanahan & Reilley in preparation of the bankruptcy petition, providing all the background on the pending litigation" and "appeared with Mr. Hoffman as counsel for Excel at the initial creditors' meeting before the Bankruptcy Trustee." *See* Claim No. 25-1, at 4. However, Mr. Stamp did not list himself in the

Debtor's schedules, including Schedules D or G, as a secured creditor or having an executory contract with the Debtor. *See* ECF No. 18, at 13, 21. Although Mr. Stamp's administrative claim asserts that he worked as in-house counsel for a period of 17 months post-petition, Mr. Stamp did not take any action to amend the Debtor's schedules or file a proof of claim to show that he had a claim and/or an attorney's lien. Only upon the filing of the amendment to Claim No. 14 on December 5, 2012 – more than 7 years after Mr. Stamp's "termination" from Excel – did Mr. Stamp suggest that he had a contract and/or an attorney's lien. The inconsistency between Mr. Stamp's assertions and the Debtor's schedules, which Mr. Stamp says he helped prepare, strongly suggest that the Debtor did not believe Mr. Stamp had a valid lien against the estate's assets or a valid executory contract as of the petition date, and Mr. Stamp did not disagree.

**D. The purported fee agreements are voidable because Mr. Stamp did not provide the clients with a duplicate copy of the signed agreements at the time of contracting.**

Pursuant to California Business & Professions Code § 6148(c), an attorney must provide the client with a duplicate copy of the signed contract (signed by both) at the time of contracting or the contract is voidable at the option of the client. The alleged agreements were not listed or referenced in the Debtor's schedules and none of Mr. Stamp's claims indicate he provided the clients with duplicate copies of the signed agreements at the time of contracting. As there is no evidence to show Mr. Stamp provided Excel with duplicate copies of the signed agreement at the time of contracting, the agreements are voidable.

**VI. To the Extent Mr. Stamp Has a Secured Claim to the Proceeds, the Trustee May Surcharge Mr. Stamp's Collateral for the Necessary Costs and Expenses of Preserving the Property Under 11 U.S.C. § 506(c).**

Mr. Stamp waited *8 ½ years* from the commencement of this case to claim an attorney's lien on all of the property of the estate. As this Court is aware, during that entire period, the estate has incurred substantial fees from its numerous attorneys to collect and preserve the merger proceeds, which is the only asset of the estate, including prosecution of the unfinished turnover litigation to conclusion. Section 506(c) allows the Trustee (or the debtor in possession) to recover from property securing Mr. Stamp's attorney's lien, if allowed, the reasonable, necessary costs and expenses of preserving the proceeds to the extent of any benefit to the holder of such claim.

Those administrative expenses are substantial and the pursuit of a surcharge would clearly be justified where the surcharge from the secured party's collateral to an administrative claimant would increase the pool of unencumbered assets to pay the other administrative claims. *Cf. In re Suntastic USA, Inc.*, 269 B.R. 846, 849-50 (Bankr. D. Az. 2001).

## **CONCLUSION**

WHEREFORE, the Trustee respectfully requests the Court (1) deny Mr. Stamp's motion to enforce an alleged attorney's lien against property of the estate; (2) sustain the Trustee's objection to Claim No. 14, as amended; and (3) deny Mr. Stamp's objection to the Trustee's motion to approve the compromise of claims among several administrative claimants. DATED: This 15th day of August, 2011.

DATED: January 25, 2013.

STROMSHEIM & ASSOCIATES

  /s/ Johnson C. W. Lee
Attorneys for MARC DEL PIERO, Trustee